[No. 20547.  Department One.  July 8, 1927.]

W. M. McMORAN, *Respondent*, v. ASSOCIATED OIL COMPANY, *Appellant*.[1]

[1] HIGHWAYS (52, 67)—NEGLIGENCE—COLLISION WITH PARKED MOTOR TRUCK—QUESTION FOR JURY. Plaintiff's contributory negligence in colliding with a truck, parked half off the paved road without any tail-light, is a question for the jury, notwithstanding that ordinarily his lights would show objects on the road five hundred feet ahead, where he testified that it was raining and his vision was obscured by the lights of approaching cars and that he did not see the truck until within fifteen feet of it.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered November 12, 1926, upon the verdict of a jury rendered in favor of the

[1]Reported in 257 Pac. 846.

plaintiff, in an action for damages sustained in an automobile collision. Affirmed.

*Roberts & Skeel* and *N. A. Pearson,* for appellant.

*Thomas Smith* and *James G. Smith,* for respondent.

Mitchell, J.—On a dark rainy evening, the respondent, W. M. McMoran, driving a roadster northerly on the Pacific Highway at a point south of Mount Vernon, ran into an oil truck belonging to the appellant, Associated Oil Company, a corporation, parked facing north, the left half of the truck being over the paved portion of the highway. He sued the oil company on account of damages to his roadster. Verdict and judgment were in his favor. The Associated Oil Company has appealed.

The assignments are that the court erred in not sustaining a challenge to the sufficiency of the evidence to justify the verdict in favor of the respondent and in denying appellant's motion for a judgment notwithstanding the verdict.

[1] There is no claim that the respondent was driving at an excessive rate of speed. He testified that his roadster was in good condition, including lights and an automatic windshield swipe that were in operation at the time. He also testified there was no tail-light on the oil truck. The roadster was considerably damaged. The principal controversy is over the testimony of the respondent in connection with the charge against him of contributory negligence. In that respect we quote it in full as given on direct and cross-examination, as follows:

"A. I was coming up the highway Sunday evening about 9:40, I should judge. Upon the right hand side towards Mount Vernon their truck was standing on the highway. My car was equipped with good lights. There was a slight rain, lights shining against me, and there was a truck without any sign in the road to

indicate there was some object on the highway. Before my lights could pierce through the other lights I tried to turn. I did not turn quick enough. . . .

"Q. What did you do when you saw this truck immediately in front of you? A. I used my brake and tried to turn. Q. Which way did you try to turn? A. Tried to go to the left. I did not go over 15 feet. I drove into the ditch on the other side. Q. Went across the road? A. Yes. Q. Now, prior to the time you saw this car was your headlight burning? A. Yes. Q. Were they giving a good light? A. Yes. Q. How far could you see them where they were standing in the opposite direction? A. I do not know exactly, quite a distance. Q. More than 500 feet if you were looking down the road? A. Oh yes, that far anyway.

"Q. Your headlights are very good? A. Yes. Q. How far could you see the lights of your headlight? A. I do not know. I did not measure it. I should judge 600 to 800 feet, further than that. Q. Could you see that car ahead in the rain that night? A. If there wasn't another car coming I could. Quite a number of cars coming from Mount Vernon. Q. Do you mean to say your lights would reveal objects on the road to one side 600 to 700 feet in front of you? A. Not against another light. Q. I mean ordinarily? A. Ordinarily you could see. Q. There were not any lights coming towards you at the time of the accident? A. Yes. Q. There were? A. Yes. Q. How many were there? A. I never made count. There were three or four cars that night. Q. Were they close to you? A. I should judge 150 feet. Q. Fifty feet at the time of the accident. A. 150. Q. Were those lights pointed towards you, how far could you see ahead? A. When clear, I could see quite a distance, when rain, it was quite inconvenient to see the lights on the other car. Q. The rain interfered with your vision ahead? A. Yes. Q. How far ahead were you able to see at that time? A. I could see 500 feet, 400 to 500 feet. Q. With these lights going? A. Yes. . . .

"Q. When was the first time you saw the truck? A. Fifteen to eighteen feet. Q. You just told us a few minutes ago that you could see 400 to 500 feet away.

Why didn't you see the truck? A. My lights against theirs and the truck standing there without a tail light. Q. You told me that with the other lights coming towards you you could see 400 to 500 feet ahead? A. Not exactly that way. Q. And you say you did not see the truck till it was fifteen feet from you? A. No sir. Q. You did not? A. No. Q. You could not have been looking ahead very closely? A. I was. . . . .

"Q. You were looking at the road ahead of you? A. I was watching the highway. Q. And you claim this truck was half on the pavement in front of you and you said you could see objects on the road 400 to 500 feet in front of you in spite of the lights coming towards you and could not see this until you got 15 feet of it? A. Yes. . . ."

There may be some confusion in this testimony. Many of the questions, some of which were compound, were not as clear as they might have been, and possibly answers were given from a viewpoint different from that intended by the questions. But the sum total of all of it was for the jury. Had the jury, by answers to special interrogatories, found upon this testimony that in clear weather the respondent could see six hundred feet or more by the lights on his car and some four hundred or five hundred feet on a rainy night, but that on account of the approaching traffic at the time of the accident he was reasonably unable to see the truck until he was within fifteen or eighteen feet of it and too late to avoid striking it, there would not be any justification for setting aside the findings because not supported by the evidence.

In discussing the question of contributory negligence charged upon the respondent, much is said on behalf of the appellant about the law upon the subject of "drive within the radius of your headlights," and a number of cases, including some of ours, are cited and discussed. We need not review them, because here was a condition temporarily occurring that had an import-

ant bearing on the situation by which respondent's vision for the moment was interfered with.

The fact that another witness driving behind the respondent, when asked how far behind him, answered "When he hit the truck, seventy-five to one hundred feet," further testified that he saw the right rear edge of the truck just before the respondent collided with it, should not necessarily convince the jury against reasonable care and prudence of the respondent upon respondent's testimony that he was looking, and did not see the truck until it was too late to avoid it. The situation of such witness was different from that of the respondent, being further away from the headlights of the approaching traffic than the respondent was at the time of the collision.

Another circumstance relied on by the appellant as bearing upon respondent's alleged contributory negligence is the fact, as testified to by appellant's witnesses, that the truck by its headlights shed light upon the pavement that could have been seen by the respondent approaching from the rear. But, in our opinion, that was also a question for the jury, and, besides, counsel overlook the testimony of the respondent, as follows: "Q. Was there any headlight or taillight on this truck? A. No."

In our opinion, the case was in all respects one for the jury and not one to be decided as a matter of law against the respondent.

Affirmed.

MACKINTOSH, C. J., FULLERTON, MAIN, and FRENCH, JJ., concur.