[No. 21971.   Department Two.   December 17, 1929.]

H. A. FROWD, *Respondent*, v. EDWARD MARCHBANK,
*Appellant.*[1]

McMullen & Snider, for appellant.

R. C. Sugg, for respondent.

[1]Reported in 283 Pac. 467.

FULLERTON, J.—In this action, tried by the court without a jury, the respondent, Frowd, recovered against the appellant, Marchbank, for the value of two cows that were killed, and for the loss in value of certain others that were injured, by an automobile driven by the appellant.

The principal facts giving rise to the action are not in substantial dispute. The respondent owns certain farm and pasture lands situated in the county of Clark. A public highway extends north and south through the lands. The highway is a much used highway, and is paved along its center for a width of sixteen feet. On the sides of the paved part of the highway are the usual shoulders, and on the west side the shoulder terminates in a ditch. The respondent's farm buildings are on the east side of the highway, and a part of the pasture lands are on the west side. The barn of the respondent is some four hundred feet distant from the highway, and is connected therewith by a lane sixteen feet wide, extending from the barn to the highway. The entrance to the pasture from the highway is through a gate in a fence which parallels the highway, the gate being about four hundred feet south of the mouth of the lane.

The respondent maintains on his farm a number of milk cows. On the evening of September 26, 1928, he milked some eighteen of the cows at the barn mentioned, completing the task between 6:30 and 7 o'clock. The cows were then turned into the lane leading to the highway for the purpose of being driven to the pasture. They were put in charge of two boys, one sixteen and the other seventeen years of age, who, in driving the cows, followed behind them. Neither of the boys preceded the cows to the highway, nor was any one else stationed there to control them when they entered on to the highway, or to warn other users of

the highway of their presence. As the cows reached the highway, they turned towards the pasture gate, scattering over the highway and completely blocking it to travel by other users, particularly to travel by automobiles or other vehicles.

On the evening in question, the appellant drove south over the highway mentioned in a Dodge touring car. It was then quite dusk, and the duskness was added to by smoke coming from fires which were burning in the vicinity. Lights were burning in residences along the highway, and the appellant had the lights on his automobile burning. As the appellant approached the vicinity of the cows, he met an automobile coming in his direction. It was traveling slowly, and had its lights burning. The appellant was then traveling at a speed of about thirty-five miles per hour. He had two companions with him, and one of these, as he passed the lights of the oncoming automobile, called his attention to the presence of the cows. Those of the cows nearest to him were then some ninety feet away. He applied his brakes in an endeavor to stop his car and sought to avoid striking the cows by steering his car between them. He did not succeed in his efforts, with the results we have before stated.

The trial court filed a memorandum opinion in which it stated the grounds upon which it rested the respondent's right to recover. The pertinent part of the opinion is the following:

"It seems to me that the statute gives the owner of live stock the right to drive them along the highway and that the provision that he must use reasonable diligence to keep the highway open for traffic simply means to keep the cattle as near the right hand side of the road as possible so that automobiles may pass through or to one side of the herd, and not that he must keep the road entirely open so that cars may go by at a high rate of speed. It seems to the court that

the expression 'right-of-way' gives to the driver of the stock a superior right, nor is it necessary for the driver of the stock to carry a light in the absence of a statutory provision to that effect. . . . The court is of the opinion that the driver of this car could by the use of reasonable care and diligence have discovered the cattle upon the highway in plenty of time to have avoided the accident as many disinterested witnesses testified that the cattle could be seen from a considerable distance. Even if the cattle had been upon the highway in violation of the statute, still the defendant would be liable under the rule of last clear chance, had he seen them or by the exercise of ordinary care could have seen them in time to have avoided the accident. Whether he saw them or not in time to have avoided the accident is not so material for the reason that if he had used ordinary care he could have seen them in time to have avoided the accident. Defendant claims that he was blinded by the lights of an approaching car, but it is the settled rule of law in this state that this would not constitute a defense."

In the findings of fact made by the trial court, the grounds of recovery are stated in the following language:

"That the said collision was the result of the negligence on the part of the defendant, in that he could have observed the cows and avoided the collision, had he exercised only reasonable and proper care, and the plaintiff was in no way negligent in driving the said animals to and across the said highway."

The statute to which the court referred in its opinion is found in Rem. 1927 Sup., § 6362-41. It is the particular provision prescribing the "rules of the road." In so far as it is here pertinent, it reads as follows:

"No person owning or in control of any livestock shall voluntarily or negligently permit any such livestock to stray upon or remain unaccompanied by a person in charge or control thereof upon a public highway.

"No person shall feed, pasture or camp with any such livestock upon, over or across any public high-

way without keeping a sufficient number of herders on continual duty to keep open the road to permit at all times the ready passage of vehicles.

"Livestock being driven to market or from one place to another over or along any public highway in this state shall have the right of way over any motor vehicle, but any person in charge of such livestock shall use reasonable diligence to open the road for traffic."

We are unable to agree with the trial court in its finding that the respondent was not guilty of negligence in the manner in which he suffered his herd of cows to be handled. The statute, it will be observed, prohibits any person owning or in control of any live stock from voluntarily or negligently permitting such stock to stray upon any public highway, or remain thereon unaccompanied by some person having them in charge or control. The respondent, in our opinion, violated both of these conditions. The statute requires an active and direct control, not a mere constructive control. The cows, it is true, were ostensibly in the charge and control of the two boys mentioned, but they did not exercise, or attempt to exercise, control over the cows in any manner after they reached the highway. The cows were turned loose into a lane and allowed to drift down the lane, enter the highway, and scatter over it before either of the boys reached it.

The boys followed the cows onto the highway, and did not enter it until after the accident happened which caused the injuries to the cows. Their acts were no more effective in controlling the cattle after they reached the highway than were the acts of the owner who was not even in the vicinity of the scene of the accident. All persons have equal rights in the use of the public highways. The statute prescribing the conditions of the use is intended for the protection of such users, and it is the duty of every one to comply with

its requirements. If he fails so to do, manifestly he is guilty of negligence under the rule that the violation of a positive mandate of the statute is negligence in itself.

Nor are we able to agree with the court's conclusion that these cows had the right of way over motor vehicles. Live stock have the right of way over such vehicles when they are on the highway lawfully; that is, when they are in the charge and control of some person, not when they are permitted to stray upon the highway without such charge and control.

Nor are we able to agree with the conclusion that the appellant is liable under the doctrine of last clear chance. It may be said in passing that this court has never heretofore applied this doctrine to cases other than injuries to the person, and the reasons given in some of our cases for the application of the rule, notably in *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 134 Pac. 934, 48 L. R. A. (N. S.) 640, and in *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, would seem to indicate that there was a special reason for applying it to that class of cases not present in others.

But, conceding, without deciding, that the rule is applicable to instances of injuries to property, we do not think that the evidence preponderates in favor of the conclusion that the appellant had a last clear chance to avoid the injury. He had no reason to suspect the presence of the cows on the highway, and had no reason to suspect that they would be allowed to enter thereon with no one in charge of them to warn him of their presence or prevent them from completely blocking the way. Negligence is not presumed; it must be shown affirmatively, and before a person can be held liable under the doctrine of last clear chance for an injury to another, the evidence must be clear and certain that the

injury could have been avoided by the exercise of reasonable care. The trial court held, if we have correctly gathered its meaning, that the negligence of the appellant consisted in driving past an automobile whose lights obscured the vision of the highway behind it.

But every one who has driven an automobile in the night-time and every observant person who has ridden in an automobile in the night-time and has met an oncoming automobile with burning lights, knows that the lights obscure objects behind it for a considerable distance before the automobile is reached until a time after its lights are passed, and to say that it is negligence to drive past an automobile in such a situation is practically to say that it is negligence to drive along a highway in the night-time at all. It must be remembered that both automobiles are in the same situation, and if one must stop so must the other, and if the rule stated by the court is to be applied, it would require some rather intricate maneuvering for the one to get by the other without violating the law. But neither the statute nor the general rules of law contemplate that cars must be stopped in such a situation. When two automobiles meet each other on a highway in the night-time, they may, under all ordinary conditions, proceed to pass at any rate of speed within the statutory limit without being subject to a charge of negligence. We find nothing in the present record to indicate that conditions here were not usual and ordinary.

It is contended that the appellant could and should have seen the cows prior to the time his vision was obscured by the lights of the oncoming automobile. But on this question, it is sufficient to say that there was a conflict in the evidence, and that, in our opinion, it decidedly preponderates against the contention.

There was testimony on the part of the respondent to the effect that the brakes of the car were out of condition. But the witnesses who so testified examined the car after the accident and after it had been taken to a garage for repairs. In the accident, it not only came in contact with the cows, but went into the ditch which we have mentioned as being on the left side of the paved highway. The accident "broke the radiator, mangled the hood all up, broke a fender, and bent the front axle on the left side." Seemingly, after the car had met with these casualties, it would not be surprising to find its brakes out of condition. But there is direct and positive evidence in the record that the brakes were in good condition. Not only was this the testimony of the appellant himself, but it was the testimony of others who had used the automobile just prior to the accident. More than this, the respondent, unwittingly perhaps, furnished some evidence of the good condition of the brakes. A companion of the appellant testified that the brakes caused the rear wheels of the automobile to slide on the pavement, and gave an estimate of the length of the skid marks. The respondent thought it incumbent upon him to contradict this estimate and produced witnesses who had measured the length of the marks and found them to be much shorter than the estimate. Manifestly, if the brakes were sufficient to cause the wheels to slide at all, they were not seriously out of condition.

The judgment appealed from is reversed and the cause is remanded with instructions to enter a judgment in favor of the defendant in the action.

MITCHELL, C. J., MAIN, and FRENCH, JJ., concur.