[No. 24149. Department One. April 21, 1933.]

LESTER LONG *et al., Appellants,* v. J. W. HICKS, *Respondent.*[1]

*Gleeson & Gleeson* and *J. F. Aiken,* for appellants.

*Harry M. Morey* and *Shank, Belt, Fairbrook & Rode,* for respondent.

HOLCOMB, J.—Appellants recovered judgment in the trial court for an injury alleged to have been negligently caused by respondent in Spokane, Washington, on December 10, 1931. At the conclusion of the case for appellants, respondent moved for a directed verdict, which was denied by the trial court, who also then stated that, if the situation was not changed when the case of respondent had been presented, a motion for

[1]Reported in 21 P. (2d) 281.

judgment n. o. v. would be granted. After the evidence for respondent had been presented, and no rebuttal testimony on behalf of appellants, the trial court granted judgment n. o. v., and also in the alternative a motion for a new trial, in case the judgment n. o. v. should be reversed by this court, by reason of two alleged errors in the instructions given by the court, and also for the reason that the evidence was not sufficient to justify the verdict in favor of appellants. The action of appellants was thereupon dismissed, from which this appeal arises.

The amended complaint on which appellant's case was based, among other things, alleged sections of the traffic ordinance of Spokane, § 22 of which requires vehicles proceeding in opposite directions to pass to the right of each other, and § 23 of which provides that:

"A vehicle, except when passing a vehicle as provided in Section 24 hereto, shall keep to the right of the center of the highway and as near to the right-hand curb as practicable."

It is then alleged that Francis avenue, on which the accident occurred, is one of the principal highways of Spokane county, and extends in an easterly and westerly direction along the northern boundary of the city of Spokane, and that the south half of that avenue is within the city limits of Spokane and the north half is without the city limits, which condition existed during all the times mentioned in the complaint. The negligence alleged on the part of respondent is that, at the time of the accident, he was driving a Ford automobile going east on Francis avenue, and that, as they approached a bob-sled on which appellants were riding, in violation of the ordinance mentioned, and in a careless and reckless manner, he drove to the middle of Francis avenue, crowding the towing automobile

and the bob-sled on which appellants were riding, far to the right, and continued so to crowd them until the bob-sled had to be driven to the north side of Francis avenue so close that appellants were thrown into the snow then on the avenue; that, at that time, respondent observed, or could have observed with reasonable care, the fact that appellants were lying helpless in the snow on the north side of Francis avenue; that they were unable to move from that place fast enough, notwithstanding their best efforts, to get off that avenue, when respondent carelessly and negligently, and while observing their helpless condition, drove his automobile over and upon the bodies of appellants, causing them to suffer injuries which were then enumerated.

As a further element of negligence, it was alleged that, at the time of the accident, respondent had one man and one woman riding with him in the front seat of his car, thereby crowding that seat with more passengers than it could reasonably hold; and at that time and place was engaged in conversation with the man and woman and paying no attention to the road on which he was driving, but recklessly and heedlessly driving the car on the left-hand side of Francis avenue without regard for the lives and safety of other persons also using the avenue and particularly appellants.

For answer, respondent made certain denials, admitted the allegation as to the condition of Francis avenue at all the times mentioned in the amended complaint, admitted that appellants were sleigh riding on a bob-sled which was being towed behind an automobile on Francis avenue, but denied everything else in that respect alleged. It was also affirmatively alleged that respondent was driving his automobile easterly on Francis avenue in a careful, lawful and prudent manner, and that appellants were negligently and un-

lawfully riding on a bob-sled, which was negligently and unlawfully being towed behind an automobile driven by one Spear in a westerly direction on Francis avenue; that appellants were thrown from the bob-sled into the path of respondent's car, and whatever injuries or damages, if any, they sustained, were in no wise caused by any negligence on the part of respondent, but were caused wholly and solely by the negligence of appellants themselves and the unlawful manner in which the automobile operated by Spear was being driven, and the unlawful and negligent manner in which the bob-sled on which appellants were riding was being towed behind the towing automobile, and the unlawful manner in which the bob-sled was steered and operated by appellant Lester Long at that time and place. The affirmative allegations of respondent's answer are denied by reply.

It may be mentioned here that, although the allegation in the amended complaint was that respondent had another man and woman with him in his car, a Model T 1924 Ford, their own evidence showed that there was only one young woman with him at the time of the accident.

Accepting the statement of facts as made by appellants, with some slight additions, as being fairly accurate, the following summary is made:

Francis avenue extends easterly and westerly along the north boundary of Spokane. Half of the avenue is inside the city and the other half is outside. At the time of the accident, there were about ten inches of snow on the ground, which had been plowed off Francis avenue to the width of from eighteen to twenty feet and piled in banks eighteen inches to two feet high on both sides of the cleared portion of the avenue, and leaving about two inches of hard packed snow, which

was "very slippery," on top of the pavement on the cleared portion of the avenue.

On the evening of December 10, 1931, appellants and eight others went out sleigh riding on a low bob-sled, about twelve or fourteen inches high, sixteen feet long and eighteen inches wide, with a sixteen inch plank on the top. It was fastened to the rear end of the automobile driven by Spear by an iron pipe nineteen feet long, which was securely bolted with an eye-bolt. It was so adjusted that it could be guided or steered by both hands and feet so that it would turn to the right or left as the towing car turned. Spear drove the automobile that towed the sled and appellant Lester Long steered the sled, sitting on the front end next the towing car. His wife sat immediately behind him, and seven other persons, including Mrs. Spear, the wife of the owner of the towing car, sat on the bob-sled. The Spear car was properly equipped with lights, both front and rear, in good condition. There were no lights whatever at either front, rear, or side of the bob-sled.

After getting on the bob-sled and driving north from the Spear home for a while, and meeting several cars, they entered Francis avenue at its east end and started westward thereon. The Spear car towing the sled was driven close up to the right-hand side of Francis avenue, outside of the city limits, and proceeded in this manner with the bob-sled being towed behind, when the car of respondent approached from the west, going east at "about twenty miles an hour." When the car of respondent approached him, Spear turned to his right, as also did respondent. There was plenty of room for each of the cars, and neither came close to the other.

Appellant Lester Long, seeing the light of respondent's car ahead, underneath the Spear car, steered the

bob-sled as close as possible to the right-hand side of the roadway, and in so doing drove the bob-sled into the deep snow that had been plowed over on to the right side of the avenue, upon which several of the passengers were pushed off by the snow, or slid off, some to the right side into the snow bank and some to the left. Appellants were both spilled off the bob-sled on its left side, and it brushed past them, going on for about forty feet, when the driver of the towing car thinking, or seeing through his mirror, that some of the passengers had fallen off, brought his car to a stop.

When respondent had passed the Spear car he turned to his left, and in some way struck Mrs. Long, knocking her over, and Lester Long was caught in some way so that part of his body was pulled underneath the automobile back of the left front wheel. As soon as the body was struck, the steering gear of the car became unmanageable, according to respondent, so that his car did proceed across the road, dragging appellant Lester Long underneath it. The bob-sled was not hit, nor was any other member of the party. As soon as respondent had brought his car to a stop and he and his companion had stepped out of it, he asked if he "had hit someone."

The accident happened about 8:30 in the evening. There was testimony that, although the moon was not shining, one could see a person standing or sitting at a distance of a block and a half to two blocks away when they were dressed in dark clothing, as the evidence showed was the nature of the clothing of all the sleigh riding party. Respondent was called as a witness by appellants for cross-examination, and testified as to the model of car he was driving and that the lights, the brakes, and the steering gear were all good. An automobile mechanic was called as an expert by appellants, who testified that the lights of a Ford, such

as owned by respondent, when in good condition, at a distance of fifteen feet ahead, should have a spread of about twenty feet of light and that the lights would show forward a distance of seventy-five feet, giving a clear vision of the street for that distance; that the brakes of such a car in good condition, if set, would stop the car, under the then existing street conditions, in a distance of not more than fifteen feet. He further testified that, with the steering-gear of that kind of automobile in good condition, the car could be turned aside in less time than the tick of a second-hand on an ordinary watch.

Various estimates of the time between the passing of the two cars and the time of the accident were made by the witnesses for appellant, varying from three to six seconds. Mrs. Spear, in fact, testified that it was about thirty seconds. All of them were mere estimates, however, and that of Mrs. Spear, although undoubtedly honestly made, was exceedingly improbable, considering that the speed of respondent's car was about twenty miles per hour and it traveled seventy-five feet. It must be assumed from all this evidence that, when the Hicks car passed the Spear car and turned his car to the left, it was done at a distance of about seventy-five feet from where appellants were sitting in the snow. Respondent, in his own behalf, testified that, when he approached the Spear car, he was blinded by the lights thereof so that he could not see anything back of that car for quite a distance.

We have also said that it is a matter of common knowledge that, where one has met an oncoming automobile with burning lights, the lights obscure objects behind it for a considerable distance before the automobile is reached and until a time after its lights are passed. *Frowd v. Marchbank,* 154 Wash. 634, 283 Pac. 467.

24

Besides relying upon the Spokane ordinance above cited, appellants rely also upon Rem. Rev. Stat., § 6362-3 (a), which reads:

"Every person operating or driving a vehicle of any character upon a public highway of this state shall drive the same in a careful and prudent manner. . . ."

Appellants also rely largely upon the doctrine of last clear chance, or at least upon the second phase of that rule, to the effect that, when the defendant in the exercise of reasonable care should have seen the plaintiff and recognized his peril in time to have avoided the injury and when plaintiff's own negligence had ceased, leaving him in a position of danger from which he could not extricate himself, defendant is liable; citing *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302, and *Settler v. Seattle,* 153 Wash. 179, 279 Pac. 570.

It must be remembered that the bob-sled had no lights of any kind upon it. Its front end was about nineteen feet from the rear end of its towing car. There was no clear light upon it. Its back end was about thirty-five feet from the back end of the towing car and there was no rear light on the back end. The bob-sled was a vehicle as defined by Rem.. Rev. Stat., § 6362-2 (a), and was also a trailer, which is defined by subdivision (e) of the same section as follows:

" 'Trailer.' Any vehicle without motive power which is attached to a motor vehicle for the purpose of being drawn or propelled by such motor vehicle."

Such trailer is required, by § 6362-27, *supra,* to carry at the left side and near the rear thereof a rear or tail light capable of exhibiting at any time a red light towards the rear and a white light towards the front; both of which lights shall be plainly visible under nor-

mal atmospheric conditions for a distance of five hundred feet. Hence, the bob-sled was a trailer and was being towed in an unlawful manner, without statutory lights.

The evidence of the driver of the towing car on behalf of appellants themselves is that respondent was driving as heretofore stated, both cars on their proper sides of the cleared roadway, until they passed each other.

There is not even a scintilla of evidence that respondent drove without using proper care, or was negligent in any manner. If there was negligence in anything it was in turning slightly to the left after he had passed the towing car and failing to see appellants sitting in the snow for the seventy-five feet after he had passed the towing car. But, as has been indicated, his vision was blinded by the lights of the Spear car which he had just passed, which is reasonable and probable. Hence, it cannot be said that he was negligent in failing to see appellants in a position of peril at any time after passing the towing car. Whatever negligence up to that time there was, certainly was that of appellants. On the other hand, appellants, having seen the lights of respondent's car under their towing car, approaching at the time they were thrown off the bob-sled, if there was any last clear chance for them to escape being struck by the approaching car during that travel of seventy-five feet by respondent, it surely was upon appellants. Other passengers did roll themselves out of the way when they saw the lights of respondent's car approaching.

Respondent had no reason to suspect and nothing to apprise him *(Frowd v. Marchbank, supra)* that appellants were riding upon a low bob-sled behind and firmly bound to another car ahead of them by a long iron pipe

and that they had been spilled out in the snow from it. Had there been lights upon the bob-sled, which was a trailer to the towing car, respondent possibly would have been bound by notice and sufficient time to avoid running over appellants under the second phase of the last clear chance rule, but there was not. There was a stronger showing in the *Frowd* case, *supra*. There was nothing whatever by which respondent could be held guilty of negligence in striking and injuring appellant. Cf. *Haydon v. Bay City Fuel Co.*, 167 Wash. 212, 9 P. (2d) 98.

The trial court was right in holding that there was not sufficient evidence to support the verdict for appellants.

The other errors claimed by appellants become unimportant and need no further argument with this determination.

Judgment is affirmed.

BEALS, C. J., MITCHELL, and MILLARD, JJ., concur.