[No. 30008. Department One. December 27, 1946.]
CARL D. SCHOUTEN et al., *Respondents*, v. FRED JACOBS, *Appellant*.[1]

*Sather, Livesey & Kingsbury,* for appellant.

*Walter F. Fisher,* for respondents.

JEFFERS, J.—This action was commenced by Carl D. Schouten and wife against Fred Jacobs, a single man, in the superior court for Whatcom county, to recover for the damage to plaintiffs' automobile alleged to have been caused when plaintiffs' car collided with a cow owned by defendant. In this opinion, Carl D. Schouten will be referred to as though he were the sole plaintiff.

The accident occurred while plaintiff was driving his car along and upon Haverstick road, one of the public roads in Whatcom county, at about eight-thirty on the evening of August 29, 1943. It is further alleged that the accident

[1]Reported in 175 P. (2d) 627.

and resulting injury to plaintiff's car was caused by defendant's negligence in permitting his cattle to be upon the public highway without being properly attended.

Defendant, by his answer and cross-complaint, denied the material allegations of the complaint and affirmatively pleaded contributory negligence on the part of plaintiff. By his cross-complaint, defendant alleged that, as a result of the accident and plaintiff's negligence, one of his cows was killed, the cow being of the fair market value of one hundred fifty dollars, for which sum he asked judgment against plaintiff.

The cause came on for hearing before the court without a jury on October 3, 1945.

It was stipulated by and between counsel that the accident occurred in Lynden township, and that at the time of the accident there was in full force and effect in such township a herd law which provided:

"In accordance with the provisions of chapter 34, Session Laws of 1911: no horse, mule, ass, cow, or other neat cattle, hog, sheep, or goat shall be permitted to go at large upon the highways of said township from and after the date of publication of this by-law."

The by-law was first published October 11, 1911.

In support of the allegations of his complaint, plaintiff first called as a witness the defendant, who located the scene of the accident as being in Lynden township, Whatcom county, the buildings hereinafter referred to, and admitted that he owned the cow which was killed and the other cattle which were on the highway at the time of the accident.

In addition to Mr. and Mrs. Schouten, who each testified, plaintiff called as witness the man who had repaired their car. He testified to the condition of the car when it was brought in, the amount of the repair bill, the market value of the car before it was damaged, and its value at the time it was brought to his shop.

Defendant introduced no testimony relative to the damage done to plaintiff's car, and no question is raised on this appeal in regard to the amount allowed plaintiff by the

trial court. Defendant testified in his own behalf, and called as witnesses his sister Maymie Jacobs and one Fred West.

The trial court, after hearing the testimony of the witnesses, and after considering some five exhibits consisting of pictures of the highway, made and entered its findings of fact, conclusions of law, and judgment favorable to plaintiff, from which judgment defendant has appealed.

The assignments of error are: in denying appellant's motion for nonsuit and dismissing the complaint; in entering findings of fact, conclusions of law, and decree holding respondent free from negligence; and in entering findings, conclusions, and decree holding appellant guilty of negligence which was a proximate cause of the accident.

The trial court refused to find that respondent was negligent, and found and concluded:

"That the *a*pproximate cause of the collision and damage to plaintiffs' automobile, and injury to said cow, was the carelessness and negligence of the defendant, Fred Jacobs, in permitting the cows to be grazing and roaming at large on said highway without being properly attended while said cows were being taken from the pasture on the north side of said highway to the cattle barn on the south side of said highway."

The trial court, as shown by its findings, was of the opinion that respondent was not guilty of contributory negligence, because just before and at the time of the accident he was driving in a careful and prudent manner, at the rate of about thirty miles per hour, with his headlights burning; that respondent was not warned in any manner that cows were accustomed to be driven upon the highway; that he had seen no cows upon the highway, and had no knowledge that any cows were there, until almost simultaneously with the collision, when his wife remarked to him that there was a cow on the north side of the highway; that respondent did not have time to stop his car or avoid striking the cow after seeing her.

■ This action having been tried to the court, the findings of the court will not be disturbed unless the evidence clearly preponderates against them. *McLean v. Continental Baking Co.,* 9 Wn. (2d) 176, 114 P. (2d) 159.

There is no dispute that appellant's barn where his cattle were kept is on the south side of Haverstick road. There is a gate immediately north of the barn leading to the highway. The house where appellant and his sister, Maymie Jacobs, live is about five or six hundred feet east of the barn, and on the highway near the house is a mail box. The gate to the pasture in which the cows were kept on the day of the accident is on the north side of the highway and about fifty rods west of the gate leading into the barn lot.

Maymie Jacobs stated that it was the usual custom for both her and her brother to go after the cows. She would let them out of the pasture and follow behind them, and her brother would go ahead of them and turn them into the barn lot through the gate first mentioned.

On the evening of the accident, at about eight-thirty, Maymie Jacobs went after the cattle alone. She opened the pasture gate, and the cows came out onto the highway and started east along the north side of the highway, Miss Jacobs following them. When the cows got up to the gate leading into the barn lot, the gate was closed, and they continued to graze along the highway on east of this gate. As near as we can tell from Miss Jacobs' testimony, it was at about the time she got up to the gate leading into the barn lot that she saw the lights of respondent's car coming from the east and some distance away. The cow which was subsequently killed had lagged behind the others about fifty feet. We quote from Miss Jacobs' testimony:

"Q. Did you see this car coming? A. Yes. I saw the lights a long ways. Q. What did you do, if anything, about the cows? A. Well, I couldn't do anything with those so far ahead, but the one I was following, if she had kept on going she wouldn't have got hit, but she crossed to the other side (south side), and I had to follow her to get her across as quick as possible. I saw the car coming at a speed. Q. Well, what did you do? A. Well, as soon as I saw she was safe, I went up to the mail box and then I looked back and I saw the man cross from the north side to the south side of the road. Q. When he crossed over, had he hit the cow yet? A. No, he hadn't, because I didn't hear the thump, and all of a sudden I heard a terrible thump, but I couldn't see any-

thing and I let the others go and went right on over and I saw the cow had been struck, and I went to the barn and told my brother. Q. Can you tell how far the main body of cattle were from this cow that got killed? A. Well, I don't know. It is a hundred feet to the little barn. Q. Would you say this main bunch was that much, or less than that? A. Well, the main bunch just kept on the north side, the way they was, and this other one crossed to the south side, and then I crossed over to the north side to get the bunch that was on the north side. Q. Now, when you went up the road before the cow was hit—that was before the accident happened? A. Yes. Q. Did you cross to the north side of the road before the accident happened? A. Yes, I crossed over because I wouldn't have seen the man cross the road if I hadn't. Q. Had you passed the main bunch of cows then? A Yes, I think I had, and then when I heard the thump, I just dropped everything and ran as fast as I could, and a little while afterwards I noticed a woman and the children on the running board, but I think that was after I already went to the barn. . . . Q. When you left this cow at the south side of the road and went up to the main bunch, could you see them easily then? A. I wasn't looking until I got up to the mail box, to see where they were. There is a kind of low place in there where they were eating."

It will be remembered the mail box is some five or six hundred feet east of the gate leading into the barn lot.

There is no evidence as to where the cow which Miss Jacobs drove to the south side of the highway went or what she did after Miss Jacobs left her and went up to the mail box, until she was struck by respondent's car. Nor is there any definite testimony relative to whether the other cattle were to the east or west of the cow which was struck, other than as appears from respondent's testimony. The trial court was justified in believing the following testimony of respondent Schouten and wife:

Respondent, at about eight-thirty on the evening of August 29, 1943, was driving west on Haverstick road. He was going to see a Mr. Purnell, who lived about a mile and a quarter beyond the Jacobs place. He was not very familiar with this road, as he usually followed the paved road. It was dark twilight, and it was difficult to distinguish anything on the road. Respondent was driving about thirty

miles per hour, and had his headlights on. Neither he nor Mrs. Schouten saw any cows on the highway, nor did they have any warning that there were cows on the highway, until almost the instant of the collision, when Mrs. Schouten, who was sitting in the front seat with respondent, turned to her right to speak to the children in the back seat, saw a cow to her right, and stated, "There is a cow." When Mrs. Schouten made this remark, Mr. Schouten glanced to the right, but they had apparently passed the cow, because he did not see it. After glancing to the right, Mr. Schouten immediately looked back to the highway, and the cow which was struck was in front of him and so close that he could not stop or avoid striking her. Respondent stated that the cow which was hit was going from right to left. The cow was undoubtedly headed south, because she was thrown around and her head struck the left front door of respondent's car. Respondent testified that he hit this cow at a point about four hundred feet east of the gate leading into the barn lot, and that she was carried along about fifty feet. The cow was struck by the left front part of respondent's car. Respondent stated that, after the accident and after he had stopped his car, some nine or ten cows came by him from the west, indicating that the main bunch was west of the point where he collided with this cow.

There were no tracks indicating that respondent was driving on the south side or to the left of the center of the highway until after the collision, when it appears there was an indication that something had been dragged in the gravel.

We are of the opinion it cannot be said the trial court erred in finding and concluding that respondent was not guilty of contributory negligence, unless, as contended by appellant, the following testimony of respondent compelled a finding to that effect. On cross-examination, the following questions were propounded to Mr. Schouten:

"Q. And then when you looked ahead, there was a cow in front of your car? A. That's right. Q. What part of the road were you on? A. I was near the center of the road.

Q. Were you straddle of the center of the road? A. Well, maybe, or a little bit to the right."

We think it appropriate to here set out the colloquy between the court and counsel for appellant which occurred at the close of the case:

"THE COURT: I think, if you review the testimony of Miss Jacobs, Mr. Kingsbury, this cow was a laggard.

"MR. KINGSBURY: And she was with her.

"THE COURT: She wasn't with her at the time. She was with her about fifty feet back, but most of them had gone beyond the gate. All the cows had gone to the north side and she had crossed the road when she saw the cow go across. She put her on the south side, and then she went up to the mail box, and when she glanced back, the car was approaching the cow. Now, we must find from the evidence here that the cow did not stay where she put it. If it had, it would not be where you contend, even, in the middle of the road. I think she said something about this cow being independent. It would appear, had the cow kept off the road, Mr. Schouten would have passed along the road and there would have been no collision. I don't think they discharged their duty as far as letting the cows be upon the road. If they were going to be upon the road, they should have been better attended. I don't think this is a case where, in any sense, it could be said that Mr. Schouten just drove into the animal. He didn't see it. At that time of night, from the evidence as to visibility and the way that cow was upon the road, I can't feel that he was negligent.

"MR. KINGSBURY: There is no evidence that this cow ran in front of him, or jumped in front of him.

"THE COURT: No. It just moved out.

"MR. KINGSBURY: You are drawing a conclusion there, and the other conclusion is just as easy to draw.

"THE COURT: No; I am not drawing a conclusion. Miss Jacobs said she saw the cow south of the road, and we know it was not off the road.

"MR. KINGSBURY: It was in the south half of the road. Everybody agrees to that.

"THE COURT: Well, I don't follow you there, on that.

"MR. KINGSBURY: Why wasn't the plaintiff on his own side of the road?

"THE COURT: I am not so sure he wasn't."

Appellant states in his brief that:

"The cow stood, at the time of impact, facing across the road to the respondent's left, and she stood somewhat to the left of the center of the road and probably appreciably to the left of center."

Appellant then cites the case of *Ebling v. Nielsen*, 109 Wash. 355, 186 Pac. 887, wherein the plaintiff drove his car into the back of a truck parked on the right-hand margin of the road. The night was dark and it was raining, and the rear light of the truck was dim. In regard to the cited case, appellant states:

"The plaintiff was held guilty of contributory negligence as a matter of law, and the court in that opinion adopted substantially the 'drive within the radius of your lights' rule, making a driver negligent if he fails to see anything within the radius of his headlight beams."

Appellant then states that the portion of the opinion in the cited case adopting the above-quoted rule was withdrawn on rehearing in 113 Wash. 698, 193 Pac. 569, but that the court adhered to the holding that the plaintiff was guilty of contributory negligence.

Appellant then refers to the case of *Morehouse v. Everett*, 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, wherein the "drive within the radius of your lights" rule was definitely repudiated and the court refused to hold that the driver of an automobile was guilty of contributory negligence as a matter of law in driving into a building temporarily left in the street while being moved. The accident in the cited case occurred at night, and "there was more or less fog at the time of the accident, which interfered to some extent with clear vision." Dr. Morehouse, the driver of the car, at about ten o'clock on the evening of the accident had seen the building in the street, and had detoured. Appellant states in his brief:

"Since the Morehouse case the court has decided a number of cases involving generally similar situations. In some, as in the Morehouse case, the court has refused to hold the driver who collides with a fixed or virtually stationary object guilty of negligence as a matter of law. But in others

the court has continued to hold that the driver is guilty of negligence even though he obtains a verdict from a jury or a finding in his favor from the trial court."

We quote further from appellant's brief:

"The distinguishing characteristic of the two lines of cases we believe to lie in the existence of special circumstances which the court feels may have excused the failure to see the object and stop. In every case which we have found in which the driver has not been said to be negligent as a matter of law there have been such special circumstances, mostly, fog, rain, or oncoming traffic with blinding headlights."

As examples of such cases, appellant then cites and briefly quotes from, or discusses, some of our cases, among them the case of *Frowd v. Marchbank*, 154 Wash. 634, 283 Pac. 467. In all of the cases cited by appellant, with the exception of the *Frowd* case, the collision was with a stationary object.

It seems to us the above statements of appellant and the cases cited demonstrate that there is no established test by which it can always be determined whether or not the driver of an automobile on a public highway who collides with a stationary object is guilty of contributory negligence as a matter of law, and certainly the cases cited do not purport to cover a situation where such a driver collides with an object which is not stationary.

In the instant case, we do not find any evidence, nor do we think a reasonable inference may be drawn from the evidence, that the cow which was struck was standing at the time of the impact facing across the road to the respondent's left, or that she stood somewhat to the left of the center of the road and probably appreciably to the left of center, as stated by appellant. Certainly the only testimony as to just where the cow was just before and at the time of the collision is that of Mr. Schouten, who stated that she was crossing the highway from right to left.

Cases of this type always present different factual situations, and as a result this court has stated: "Each case must rest upon its own facts and be determined accordingly." See *Lewis v. Spokane*, 124 Wash. 684, 215 Pac. 36.

We desire to refer to the case of *Frowd v. Marchbank, supra,* as it is the only case cited by appellant where the collision did not occur with a stationary object, and for the further reason that it involved a collision with cows on the highway. In that case, the respondent, Frowd, had on his farm a number of milk cows. As in the instant case, his buildings were on one side of the highway and the pasture for his cattle was on the other. There was a lane leading from his barn to the highway, and the gate leading into the pasture was about four hundred feet south of the place where the lane from the barn connected with the highway. On the evening of the accident, respondent turned his cattle into the lane at about seven o'clock, in order that they might be driven to the pasture. They were put in charge of two boys, one sixteen and one seventeen years old, who in driving the cows followed behind them. Neither of the boys preceded the cows to the highway. As the cows reached the highway, they turned toward the pasture gate, scattering over the highway and blocking it to travel.

Appellant was driving south over the highway. It was then quite dark, and the darkness was added to by smoke coming from fires which were burning in the vicinity. Appellant had his lights on, and as he approached the cows he met an automobile coming in his direction. He was traveling about thirty-five miles per hour, and as he passed the oncoming automobile one of his companions called his attention to the presence of the cows, the nearest being then about ninety feet away. Appellant applied his brakes, but could not stop in time to avoid hitting the cows.

In the lower court, Frowd was permitted to recover damages for two cows which were killed, upon the following theory:

" 'That the said collision was the result of the negligence on the part of the defendant, in that he could have observed the cows and avoided the collision, had he exercised only reasonable and proper care, and the plaintiff was in no way negligent in driving the said animals to and across the said highway.' "

In reversing the judgment, we stated:

"It is contended that the appellant could and should have seen the cows prior to the time his vision was obscured by the lights of the oncoming automobile. But on this question, it is sufficient to say that there was a conflict in the evidence, and that, in our opinion, it decidedly preponderates against the contention."

We also stated:

"We are unable to agree with the trial court in its finding that the respondent was not guilty of negligence in the manner in which he suffered his herd of cows to be handled."

We, of course, do not desire to be understood as stating that the facts in the cited case are in all respects similar to those in the instant case. We do not, in the instant case, have the fact of an oncoming car. However, in the cited case, we have the fact that the driver of the car was warned of the cattle on the highway some ninety feet before he struck them. In the instant case, we have the positive testimony of the driver of the car that he saw no cattle on the highway, nor was he warned of cattle on the highway, until almost the instant the cow which was struck appeared before him. Mrs. Schouten also testified that she saw no cattle on the highway until almost the instant of the collision, when she turned to her right to talk to the children in the back seat and said, "There is a cow."

We are of the opinion it cannot be said that the trial court erred in refusing to find and conclude that respondent was guilty of contributory negligence as a matter of law, unless, as above stated, respondent's answers to the questions propounded to him on cross-examination compel such a finding. We seriously doubt if such testimony shows conclusively that respondent was negligent. Respondent's answers surely admit of two interpretations, namely, that he was either just to the right of the center of the highway, or possibly straddle of the center. The trial court undoubtedly, as shown by his colloquy with counsel for appellant, was of the opinion respondent was not to the left of the center of the highway, and, after a consideration of all the testimony,

including the pictures of the highway, we have the same feeling.

Fred West was there immediately after the collision, and he and Mr. Jacobs examined the road. It appears from Mr. West's testimony that there were no tracks or signs indicating that respondent was to the left of the center, until after the collision, when there was some indication that something had been dragged in the gravel. Of course, respondent having struck the cow with the left front of his car, it is reasonable to infer it would tend to throw or swing the car to the left. It is apparent from the exhibits that there were two tracks on this gravel road, one used by westbound traffic and one by eastbound traffic. A driver using either of the traveled portions would have the left side of his car near the center of the highway.

However, if it be assumed that respondent did violate Rem. Rev. Stat., Vol. 7A, § 6360-75 [P.P.C. § 295-1], in that he was not driving to the right of the center of the highway, still we are of the opinion it cannot be said the trial court erred in refusing to hold that such negligence contributed to the accident.

■ We are of the opinion there is ample evidence to sustain the conclusion of the trial court that the proximate cause of the collision was the carelessness and negligence of appellant in not properly attending his cows while they were being taken from the pasture to the barn.

For the reasons herein assigned, the judgment of the trial court is affirmed.

MILLARD, C. J., ROBINSON, MALLERY, and SCHWELLENBACH, JJ., concur.