[No. 31278. Department One. July 18, 1950.]

GORDON SMITH, *Appellant*, v. CLIFTON BARNES *et al.*,
*Respondents.*[1]

*Chas. R. Lewis*, for appellant.

*J. W. Graham*, for respondents.

DONWORTH, J.—Gordon Smith, as plaintiff, and Alfred Dale McClanahan and his father, J. P. McClanahan, as co-plaintiffs, commenced separate suits (which were consolidated for trial) to recover for personal injuries and property damage sustained as the result of the same automobile accident. The defendants in the Smith case were Clifton Barnes and his wife and their son, Charles R. Barnes, while

[1]Reported in 220 P. (2d) 670.

in the McClanahan case only the parents were named as defendants. The defendants Clifton Barnes and wife cross-complained against the McClanahans for damage to their automobile resulting from the collision.

The cause was tried to the court sitting without a jury and at the conclusion of the trial the court took the case under advisement and subsequently filed a memorandum opinion holding in favor of the defendants in each case. After a motion for a reconsideration of the memorandum opinion or, in the alternative, for a new trial had been denied, a judgment was entered dismissing both actions and granting defendants Barnes and wife judgment on their cross-complaint against J. P. McClanahan. Plaintiff Gordon Smith alone has appealed.

The facts giving rise to the litigation as found by the trial court are not materially disputed. A 1947 Ford sedan, belonging to J. P. McClanahan and his wife and used as a family car, was being driven on the night of October 16, 1948, by their minor son, Alfred Dale McClanahan, with his parents' permission. Appellant Gordon Smith, a guest of Alfred, was the only passenger in the automobile. The two young men had gone to Olympia for the purpose of eating Chinese food and were returning, about one-thirty a. m. on October 17th, in a northerly direction toward Shelton. About three miles south of Shelton, Alfred attempted to pass a Chevrolet automobile going in the same direction, struck its left rear fender very lightly causing his car to swerve to the other side of the road. The McClanahan car went up a bank, turned over and fell on its right side on the west side of the roadway with its wheels pointing toward Shelton. This car completely obstructed the west half of the highway and its lights were extinguished. The two occupants were trapped inside the car.

The Chevrolet, which had been slightly struck in the rear, came to a halt on the east shoulder of the road at a point about five or six feet ahead of the overturned car. Its driver, Jack Killeen, and his passengers went back to attempt to extricate the pair trapped in the automobile. Jack had a

flashlight with him. While they were rendering aid, Jack saw the lights of a car approaching from the north, which was driven by respondent Charles R. Barnes. Taking the flashlight, he ran up the road approximately one hundred fifty feet north of the overturned car and attempted to flag the Barnes car. At the trial he was unable to testify definitely as to the size or condition of the flashlight, but he did feel positive that it was working.

The evidence showed that the lights of the Chevrolet had been left on high beam and were shining down the road toward Shelton. The road at this point is approximately straight for a distance of two hundred eighty feet and then curves very gradually to the west. An automobile, approaching the overturned McClanahan car from the north, would throw its lights directly down the road for that distance. Its own lights could be seen from this point for a distance of one thousand feet, since the highway is practically level for that distance.

The Barnes car, a 1946 Ford sedan, was traveling on the west half of the highway at a speed of approximately forty-five miles per hour. Charles Barnes testified that when he rounded the curve he was "blinded" by the lights of the Chevrolet and was unable to see the McClanahan car lying in the road beyond it. The color of the McClanahan car (whose lights were not burning) was dark and tended to blend with the pavement. As he approached the Chevrolet (which he thought was proceeding toward Shelton), Barnes dimmed his own lights and watched the right side of the road to avoid crossing the yellow center line. About one hundred feet before reaching the point of impact, he took his foot off the gas and "coasted."

The Barnes car, without slowing up substantially, struck the overturned car and forced it fifty feet south of its original position. As a result of the collision, appellant and Alfred Dale McClanahan, who were at the time attempting to escape through the window of the overturned automobile, were both injured. Appellant's injuries were very severe.

The two cars suffered heavy damages. Barnes denied that he saw anyone on the road with a flashlight.

■ Appellant being the guest of Alfred McClanahan, the latter's contributory negligence cannot bar appellant's recovery, if respondent Charles Barnes was guilty of negligence which was the proximate cause of appellant's injuries.

Appellant's assignment of error is stated in his brief as follows:

"The Court erred in its Findings of Fact and Conclusions of Law, and Judgment of Dismissal holding Charles R. Barnes to be without negligence."

■ Since appellant does not specify in his brief wherein the findings of fact are not supported by the evidence, the trial court's findings will be presumed to be correct. See *Spalding v. Department of Labor & Industries,* 29 Wn. (2d) 115, 186 P. (2d) 76; *Theurer v. Condon,* 34 Wn. (2d) 448, 209 P. (2d) 311.

In finding No. 7, the trial court described the collision in this language:

"That at the time and place above mentioned, Charles R. Barnes, one of the defendants, was driving a 1946 Ford Sedan south along said highway, the said car being the property of Clifton Barnes and wife, parents of Charles R. Barnes. That he was driving on his own side of the highway at a speed of about 45 miles per hour as he reached the south termination of said curve. That at said point the glaring lights of the Chevrolet car struck him partially obscuring his vision. That he believed the car to be approaching on the highway. That he removed his foot from the throttle and dimmed his lights. That he saw no flash light. That if there was a flash light, apparently it's beam was absorbed in the rays of the high lights of the Chevrolet car. That the lowering of the beam of light on his own car focused the beam primarily on the right edge of the highway, and that to avoid contact with the car which he presumed to be approaching, he centered his attention primarily on the right edge of the pavement and on the yellow line. That he had no warning as to any obstruction on the highway or any reason to think that such an obstruction existed. That the bright lights so obstructed his vision that he was unable to discern the overturned car; that he passed the Chevrolet

and immediately struck the McClanahan car which he had not seen prior to the crash."

Appellant's brief states the rule of law applicable to the facts of this case to be as follows:

"The driver of an automobile is bound to use reasonable care to anticipate the presence on the highway of others who have equal rights to be there and the fact that his vision is temporarily interfered with, either by the glaring sun or headlights does not relieve him from that duty."

It is argued that when temporarily blinded, the driver of a car must either stop or proceed at his peril.

A similar contention was made in *Frowd v. Marchbank,* 154 Wash. 634, 283 Pac. 467. The trial court in that case had held that it was negligence for a driver of an automobile to drive past another automobile whose lights obscured his vision of the highway behind it. This court, in reversing the judgment, stated:

"But every one who has driven an automobile in the night-time and every observant person who has ridden in an automobile in the night-time and has met an oncoming automobile with burning lights, knows that the lights obscure objects behind it for a considerable distance before the automobile is reached until a time after its lights are passed, and to say that it is negligence to drive past an automobile in such a situation is practically to say that it is negligence to drive along a highway in the night-time at all. It must be remembered that both automobiles are in the same situation, and if one must stop so must the other, and if the rule stated by the court is to be applied, it would require some rather intricate maneuvering for the one to get by the other without violating the law. But neither the statute nor the general rules of law contemplate that cars must be stopped in such a situation. When two automobiles meet each other on a highway in the night-time, they may, under all ordinary conditions, proceed to pass at any rate of speed within the statutory limit without being subject to a charge of negligence. We find nothing in the present record to indicate that conditions here were not usual and ordinary."

Several decisions of this court upon which appellant relies most strongly are distinguished in the case of *O'Neil v. Gruhn,* 197 Wash. 557, 85 P. (2d) 1064, where it was said:

"It has been repeatedly held by this court that it is not contributory negligence, as a matter of law, to fail to see, in the night-time, a truck parked on the edge of the narrow pavement, with no red light, where the vision of one approaching the truck from the rear was obscured by the glare of approaching automobiles from the opposite direction. On this question, in *Frowd v. Marchbank,* 154 Wash. 634, 283 Pac. 467, it was said:

"[Paragraph hereinbefore quoted.]

"The cases of *McMoran v. Associated Oil Co.,* 144 Wash. 276, 257 Pac. 846, *Griffith v. Thompson,* 148 Wash. 243, 268 Pac. 607, *Gilbert v. Solberg,* 157 Wash. 490, 289 Pac. 1003, *Long v. Hicks,* 173 Wash. 17, 21 P. (2d) 281, and others that might be cited, are to the same effect.

"The case of *Jacquith v. Worden,* 73 Wash. 349, 132 Pac. 33, 48 L. R. A. (N.S.) 827, relied on by Gruhn, where a driver of an automobile, while blinded by the headlight of a street car, struck an automobile, parked at the curb, upon which there were no lights, and crossed the street as a result of the collision, striking a pedestrian who had just previously alighted from the street car at the crossing, bears no analogy, as we view it, to the facts in the present case.

"*The rule of the dust-cloud cases (Trainor v. Interstate Const. Co.,* 187 Wash. 142, 60 P. (2d) 7, and *Pryor v. Safeway Stores, Inc.,* 196 Wash. 382, 83 P. (2d) 241), *is not the same as that applied when meeting an automobile with its lights burning.* Under the settled doctrine of this court, the respondent was not guilty of contributory negligence, as a matter of law, in failing to stop, when his vision for an instant was completely obscured." (Italics ours.)

These two cases appear to us to be directly in point as to the duty of a driver situated as Charles Barnes was here, and they support the judgment of the trial court in this case. In the latter case, the truck involved was parked on the traveled portion of the road with no lights visible to the rear. The driver of the car approaching the truck from the rear was blinded by the lights of another car parked on the roadway parallel to the truck. We are of the opinion that, the facts in the cited case being practically identical with those found in this case, the same rule of law must be applied and this was properly done by the trial court.

Respondent Charles Barnes had no reason to suspect that the right half of the highway in front of his car was in

any way obstructed. The McClanahan car blended with the pavement and made it almost impossible to see until respondent was upon it. Under the circumstances of this case he was under no obligation to stop before passing the Chevrolet.

We find nothing in the evidence from which we can conclude that the trial court was in error in holding that this respondent was not negligent. Its dismissal of appellant's action was correct.

The judgment will stand affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.