VERLE FORD, Appellee, v. DES MOINES ICE & COLD STORAGE COMPANY, Appellant.

HIGHWAYS:  Crossing Street at Non-Intersection Point.  The driver
1  of a vehicle who crosses from one side of a street to the other between intersections, in violation of ordinance requirements, is guilty of negligence.

NEGLIGENCE:  Contributory Negligence—Lookout on Street.  Evi-
2  dence relative to failure of an injured party to see an object in the street reviewed, and, in view of the condition of the street, and other matters distracting attention, held to present a jury question on the issue of contributory negligence.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF,
Judge.

NOVEMBER 11, 1919.

ACTION to recover damages consequent on a collision
with defendant's ice wagon, resulting in a directed ver-
dict for the defendant. The plaintiff moved for new trial,
and, on hearing, the motion was sustained. The defend-
ant appeals.—*Affirmed.*

*Parrish & Cohen,* for appellant.

*H. S. Thomas,* for appellee.

LADD, C. J.—In the morning of September 4, 1917, at
about 7:30 o'clock, plaintiff was driving a twin-cylinder mo-
torcycle, with side car, along the south side of Grand
Avenue, in the city of Des Moines, in an

1. HIGHWAYS:
crossing street
at non-inter-
section point.
easterly direction. The rain was falling,
and the pavement was slippery. As he ap-
proached Nineteenth Street, he observed an
ice wagon of the defendant company, with team attached,
and at right angles with the avenue, moving slowly across
in a southerly direction, and at a place several hundred
feet west of Nineteenth Street, intersecting Grand Avenue.
The driver of the team with the ice wagon had gone in a
westerly direction along the north side of Grand Avenue,
and had turned to the south, to enter a private driveway
of one Chamberlain, to unload ice, as he testified, or was
turning to go back to the east, along the south side of the
avenue. Plaintiff testified that he did not observe the ice
wagon until he was within 25 or 30 feet of it, and the cycle
struck the center of the wagon or front wheel, receiving
serious injuries. In this action, damages suffered by him
are sought, and the only question involved is whether the
evidence was such that the cause should have been submit-
ted to the jury.

I.   The theory of the defendant is that its employee was turning to enter the driveway of Chamberlain, and, though not turning at the street intersection, was not negligent in so doing.   Plaintiff, on the other hand, contends that the evidence was such as would have sustained a finding that the teamster was turning around, and that, in any event, he was turning in the street, in violation of Paragraph 7 of Ordinance No. 2553 of Des Moines.   The driver testified that he had turned to enter the driveway, and was about to do so at the time of the collision, and, of course, the jury might so have found.   But plaintiff swore that he tried to go to the south curb, and "did not see any driveway there."   Another witness testified that he was "positive there was no driveway there," and with him, a third witness thought the place of collision about a third of a block east of the driveway.   The evidence that the heads of the horses were toward the southeast, while the wagon was at right angles with the avenue, is undisputed.   The situation, if as described, tended strongly to show that the driver was turning some distance east of the driveway, and tended to put in issue his claim that he turned to enter the driveway.   Whether he was so doing, however, is not controlling;  for Paragraph 7 of Ordinance No. 2553 of the city ordinances declares that:

"A vehicle turning from one side of the street to the other shall do so only by going to the intersection, and turning to the left, past the center of said intersection."

The language employed hardly needs interpretation. Travel on many of the city streets ordinarily is so congested, and the speed of the motor vehicles is so high on others, that precaution, such as contained in this ordinance, seems necessary, to avoid unduly obstructing free passages, and consequent collisions.   By requiring that vehicles cross the streets only at intersections, much of the danger in so doing is eliminated;  for more space is afforded the vehicle

turning, and better opportunity given those passing to and fro to avoid collision. The design is to keep the streets open to the free passage of vehicles, and to keep "any from so occupying any street as to obstruct traffic," as provided by Paragraph 27 of the same ordinance. Whatever the reasons for the enactment of the portion of the ordinance quoted, it does prohibit crossing the street elsewhere than at the intersections; and in so doing, the defendant's driver was guilty of negligence.

II.    Nor do we think that it can be said, as a matter of law, that plaintiff was guilty of contributory negligence. He testified that he came in an easterly direction on Ingersoll Avenue, turned south on Twenty-eighth

2. NEGLIGENCE: contributory negligence: lookout on street.

Street into Grand Avenue, and then proceeded in an easterly direction, near the south curbing; that, when he reached Twenty-third Street, he threw off the power, and coasted from there on; that he was moving at the rate of from 15 to 18 miles an hour; that he looked straight ahead, and, as he neared Nineteenth Street, kept a lookout for bumps in the uneven pavement there; that he listened as much as he could, but that the rain, which was pouring down, interfered; that he did not see the wagon until 20 or 30 feet from it; that the heads of the horses were about 6 feet from the south curbing, and, in his language:

"As soon as I saw the wagon, I put on both brakes, and that locked my back wheel; that did not stop my wheel; it slowed me down a little, but not very much, on account of the pavement. I then saw that I could not stop, and I tried to make for the curbing, but I could not make the curbing in time, and crashed into the wagon."

No signals were given by either the driver or plaintiff. He testified further, in substance, that the condition of the pavement, in being slippery, prevented him from avoiding the collision; that, had the pavement been dry, he could

have stopped his motorcycle, moving at 20 miles an hour, in 12 feet, but, when they were wet, not within less than 25 or 30 feet. One Campbell was driving an automobile, from a half block to a block and a half in the rear of plaintiff, in the same direction, and was asked by the court:

"How far could you see ahead of you that morning? A. I could not say. Court: Could you see a block? A. Oh, yes. Court: Could you see two blocks? A. Yes, I should judge so."

Though the question is not free from doubt, we are inclined to the opinion that whether the plaintiff was at fault, was a question for the jury. He might have been found not to have been moving to exceed 15 miles an hour. The witnesses are agreed that "it was raining hard," and this might have interfered somewhat with his vision. His attention may have been somewhat diverted by the unevenness of the pavement. He might have relied somewhat upon others' observing the law of the road, and, under all the circumstances, we are not inclined to say, as a matter of law, that he was at fault in not observing the ice wagon across the way before he did. Thereafter, he appears to have done all he could; and his only fault, if any there was, was in not keeping a better lookout for obstacles in his way.

We are of the opinion that the trial court rightly held, in ordering a new trial, that the evidence made out a case for submission to the jury. Motion to strike reply is overruled.—*Affirmed.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.