[No. 24028. *En Banc.* February 20, 1933]

MARIE STACK, *a minor, by Eugene Stack, her guardian ad litem, Respondent,* v. L. J. DOWELL, INC., *Appellant.*[1]

*Reynolds, Ballinger, Hutson & Boldt,* for appellant.
*James R. Gates,* for respondent.

HOLCOMB, J.—This appeal is from a verdict and judgment for damages on account of personal injuries sustained by the minor respondent on April 27, 1931, as the result of a collision between a truck belonging

[1]Reported in 19 P. (2d) 125.

to appellant and an automobile driven by the mother of respondent.

The collision between the truck and the car occurred at or near the southerly end of the Fairview avenue bridge in Seattle, crossing the lowlands on the east side of Lake Union. Fairview avenue is a regularly established and improved street in Seattle, and runs in a general northerly and southerly direction along the east side of Lake Union and connects with Eastlake avenue. About two hundred feet south of its connection with Eastlake avenue, there is a viaduct or bridge on Fairview avenue over the lowlands. This viaduct is divided into two roadways, each twenty feet wide, with a space of about ten feet between them. These roadways have existed at this place for a long period of time, but on account of their dilapidated condition were being repaired by a construction crew under the supervision of the engineering office of Seattle. All southbound traffic moves on the westerly viaduct and all northbound traffic travels on the easterly viaduct.

These viaducts are wooden structures with rails on the sides thereof, and the planking on the roadway of the west viaduct near the south end was covered with a coat of asphalt. Fairview avenue immediately south of this viaduct is paved with two strips of asphalt paving, separated by a dirt strip some ten to twelve feet in width. The strips of paving south of the bridge are eighteen to twenty feet in width. There was no street intersection at the south end of the viaduct.

At the time in question, A. C. Goerig & Co. had a contract with the city to fill dirt around the viaduct, and was making a fill west of the south end of the west viaduct, and had been in the habit of crossing, as the truck in question was crossing, at the south end of the viaduct and backing north to the fill to dump. Ap-

pellant, with the permission of Goerig, was dumping dirt on the fill.

The first intersection south of the viaduct is Prospect street, which is about 250 feet therefrom, runs generally in a northeasterly and southwesterly direction, and connects Fairview avenue with Eastlake avenue. Eastlake avenue and Fairview avenue at this point are about 200 feet apart. Eastlake avenue runs in a general northwesterly and southeasterly direction, converging with Fairview avenue about 150 feet north of the viaduct. At the time of the accident, both viaducts were open to all kinds of traffic. There was a sign, however, posted on the west viaduct about 250 feet from the south end, with these words on it: "Slow, Construction Ahead."

Respondent, who was about eleven years and three months old, was riding in a car driven by her mother traveling in a southerly direction on the west viaduct. At the same time, appellant's truck was approaching the south end of the viaduct on the east strip of pavement traveling north, and turned west to its left across the westerly strip of pavement in front of the car driven by the mother of respondent, which ran into the truck and hit it at the extreme westerly edge of the west pavement.

Certain provisions of traffic ordinances of Seattle were pleaded and proven as follows: Subdivision 8, § 97, reading: "On a street divided longitudinally by a parkway, wall or viaduct vehicles shall keep to the right of such division." Section 100, prescribing in part as follows: "It shall be unlawful to drive or operate a vehicle in crossing or turning about upon a crossing other than at a street intersection except when at a street end."

The mother of respondent testified that she did not slow down from the speed at which she was going when

she saw the sign marked "Slow, Construction Ahead," although she saw the sign reading "Slow," but did not see the words "Construction Ahead". She testified that she was going only twenty or twenty-five miles an hour, but that, had she slowed down, she probably would not have struck the truck.

As to negligence on the part of the mother in driving the car in which respondent was injured, the trial court instructed the jury, among other things, defining proximate cause, that there might be more than one proximate cause for the same injury; and that, if the jury found that both respondent's mother and the truck driver were negligent, and that the negligence of each was the proximate cause of the collision, and that the collision proximately resulted from the combined negligence of both, then respondent was entitled to recover. They were further instructed, however, that, if they found that both drivers were negligent, but that the negligence of appellant was not one of the proximate causes of the collision, and that the collision resulted solely as the proximate result of the negligence of respondent's mother, or from any cause other than from that of appellant's negligence, then respondent could not recover. Appellant did not except to these instructions, and they became the law of the case.

The jury were also correctly instructed that the negligence of Mrs. Stack, if any, was not imputable to respondent, which appellant accepted as stating the law correctly, took no exceptions, and it therefore became the law of the case.

The court instructed the jury by instruction No. 8 as follows:

"You are instructed that on April 27, 1931, there was in force in the city of Seattle an ordinance regulating traffic in said city providing as follows:

" 'It shall be unlawful to drive or operate a vehicle

in crossing or turning about upon a crossing other than at a street intersection except when at a street end.'

"You are instructed that the uncontroverted evidence in this case shows that there was no street intersection at the point in question within the meaning of this ordinance, and that on April 27, 1931, said Fairview avenue was open to all kinds of traffic on the west side thereof, and the south end of the viaduct thereon was not a street end within the meaning of said ordinance.

"It is admitted by the defendant that its truck driver was traveling north on the easterly strip of pavement on this street and turned to his left across the westerly strip of pavement near the south end of the viaduct, and you are instructed that it is negligence in and of itself to violate this provision of the ordinance. In other words, the above provision of the ordinance prohibited the defendant's driver from crossing the westerly strip of pavement on the street at said point, and this is true regardless of whether he stopped or held out his hand prior to doing so and regardless of whether or not Mrs. Stack was approaching from the north at the time."

Appellant devotes most of its argument attempting to show that this instruction was erroneous in that it constituted a comment on the evidence, and was not qualified by the rule asserted to exist in this state to the effect that,

"If some good excuse appears, which would be a sufficient defense to an action for the penalty imposed by the law, or which would show greater care in technical violation of the law than in observing it, then the law is not really violated."

Appellant also argues that the provisions of the ordinance are unreasonable. We can see nothing unreasonable in the requirements of the ordinance in question. It is no more unreasonable than some ordinances which have been frequently before us, such as ordinances forbidding pedestrians, when leaving street

cars, from crossing intersections diagonally, which have never been considered unreasonable, as was shown in *Fennel v. Yellow Cab Co.* 138 Wash. 198, 244 Pac. 253, and other ordinances referred to in a general way in *Crowl v. West Coast Steel Co.*, 109 Wash. 426, 186 Pac. 866.

The violation of such an ordinance was held to be negligence *per se* in *Ford v. Des Moines Ice & Cold Storage Co.*, 187 Ia. 729, 174 N. W. 486. The city ordinance in that case prescribed:

"A vehicle turning from one side of the street to the other shall do so only by going to the intersection, and turning to the left, past the center of said intersection."

The court in that case well observed:

"The design is to keep the streets open to the free passage of vehicles, and to keep 'any from so occupying any street as to obstruct traffic,' as provided by Paragraph 27 of the same ordinance. Whatever the reasons for the enactment of the portion of the ordinance quoted, it does prohibit crossing the street elsewhere than at the intersections, and in so doing, the defendant's driver was guilty of negligence."

Nor is the fact that the street was under process of repair material, unless there was an immediate emergency because of which it would have been negligent for appellant's driver to have driven otherwise than as he did. In *Peterson v. Seattle,* 40 Wash. 33, 82 Pac. 140, the court instructed the jury:

"But if while the work is in progress the city does hold it open for public travel and invite the public to cross over it, the same duty is upon the city as in the case of an ordinary street, which is not being improved, to see that it is kept in a reasonably safe condition for public travel in view of the improvement and work going on and all of the surrounding circumstances."

We held that instruction correct, rejected contentions made by appellant and sustained by certain authorities, and restated as the rule announced by this court:

"If a city undertakes to alter, repair, or improve its streets, it is in duty bound to use reasonable precautions to guard the public from injury, and in doing so may, if necessary, temporarily close said street from public travel."

As shown by the evidence in this case, there was no emergency requiring the use of the wrong roadway by the truck driver of appellant, so that this case meets the test laid down in 45 C. J. 720, § 103; id., 731, § 121, where it is stated that the fact which will excuse a technical violation of statute or ordinance must result from causes or things beyond the control of the person charged with the violation. That is the test announced in our own cases: *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331; *Sundstrom v. Puget Sound Traction, Light & Power Co.,* 90 Wash. 640, 156 Pac. 828; *Colvin v. Auto Interurban Co.,* 132 Wash. 591, 232 Pac. 365; *Gilbert v. Solberg,* 157 Wash. 490, 289 Pac. 1003; *Martin v. Bear,* 167 Wash. 327, 9 P. (2d) 365.

When a defendant has violated the statute (or an ordinance), he has the burden of proving excuse or justification. He has the affirmative of the issue to justify his violation of the law of the road. In this case, nothing more was shown than the mere convenience of the truck driver for his violation of the ordinance, which is not a sufficient excuse. *Martin v. Bear, supra.*

The instruction complained of was appropriate to the facts in this case, and stated the law correctly.

Appellant also complains of the denial of its motion for judgment n. o. v., or alternatively, for a new trial.

Under the law of this jurisdiction, the court would have erred had it granted the motion for judgment

n. o. v. The trial court correctly and tersely stated the law in ruling upon those motions, as follows:

"Mere expediency or convenience to a motorist is not a sufficient excuse for the violation of a positive ordinance. To excuse a technical violation of an ordinance there must be some reason of necessity or apparent necessity caused by facts over which the person charged with violation has no control."

Other errors assigned by appellant, including the errors alleged upon requested instructions rejected, have been examined and found without sufficient merit to justify discussion or reversal.

The judgment is affirmed.

PARKER, MAIN, MITCHELL, BLAKE, MILLARD, and STEINERT, JJ., concur.

TOLMAN, J. (dissenting)—It seems to me that the majority has misapplied the case of *Peterson v. Seattle,* 40 Wash. 33, 82 Pac. 140. The court was there dealing with an accident caused by the city having left a street which was undergoing repairs in a condition dangerous for ordinary traffic, and yet open for traffic and wholly unguarded. In that case, the issue was as to negligence on the part of the city. Here, not the city but the driver of the truck is charged with negligence, and the question is whether he might rely upon and be guided by the directions of the city's engineer in charge of the work and assume that the city, by the erection of the signs or other precautions, had performed its duty to the traveling public. Still, regardless of this marked. difference in the issues, what was said in the *Peterson* case was, no doubt, sound as there applied; but when applied to the present state of facts, the rule will require every city, county and the state, itself, to close completely all streets and highways where repair or

construction work is under way, even though such work be of a minor character.

I think, also, the majority has disregarded the legal effect of the sign placed by the city: "Slow, Construction Ahead." In my judgment the city, exercising its lawful right of control over streets, may not only close the street completely when necessary, but, as the greater includes the less, it may partially close or limit the use of the streets as circumstances may, in the discretion of the proper officials, make necessary or advisable. In those cases where a limited use may safely be permitted, it would be a great hardship on the traveling public to require an absolute closing. I am therefore of the opinion that the placing of a limiting sign, as was done in this instance, was a proper exercise of the power of the city over its streets, and that thereby the use of the particular street was lawfully limited accordingly.

If these views are sound, it follows that the jury was erroneously instructed.

I therefore dissent.

BEALS, C. J., concurs with TOLMAN, J.