[No. 26153.   *En Banc.*   November 9, 1936.]

C. H. SMITH, *Respondent,* v. JOHN E. BRATNOBER, JR., *Appellant.*[1]

‡Reported in 62 P. (2d) 455.

*Allen, Froude & Hilen,* for appellant.
*Padden & Moriarty,* for respondent.

HOLCOMB, J.—This action is for personal injuries growing out of a collision between the disabled automobile of respondent and the Chrysler coupe of appellant. The case was tried to the court and a jury. Appropriate motions challenging the sufficiency of the evidence were timely made by appellant, and over his objections the cause was submitted to the jury. A verdict was returned in favor of respondent for $3,500, upon which judgment was entered. Motions for judgment n. o. v. and for a new trial were likewise timely, but unsuccessfully, made. This appeal results.

The collision occurred on a graveled road between Redmond and Issaquah, on the east side of Lake Sammamish, at about 9:15 p. m. on Sunday, July 22, 1934. The atmosphere was clear and the weather dry. The road is a main traveled highway and is level for all practicable purposes. Immediately north of the place of collision is a long, slight, flat curve, about nine hundred feet in length, termed by the engineer a three-degree curve.

Respondent introduced evidence to the effect that he was a well digger and on the day of the accident had been digging a well on the east side of Lake Washington, which he and his partner finished about four o'clock, thereafter working a short time on his partner's own car. Returning home in his 1924 Model T Ford, which was equipped with an improvised truck

bed, or compartment, at the rear of the seat for carrying his tools, he visited with various acquaintances for nearly two hours and then proceeded in a southerly direction from Renton.

Because of the poor operation of the steering gear, he stopped, discovered the radius rod bent, obtained a flashlight from the tool compartment, and straightened the rod. When replacing the flashlight, he noticed a flask of whiskey which his partner had put in the car for him and drank about a quarter of a pint of it. He then proceeded on his way at about twenty-five miles per hour, which, he said, was as fast as his car would go.

Within about half a mile, the steering apparatus became unmanageable and the car suddenly turned to the left, negotiating a complete arc within the width of the highway, which at that place was twenty-seven and a half feet. In swinging around, the hub cap of his car scratched the guard rail on the easterly side of the road, coming to a stop about two or three feet from the south end of such guard rail. The front wheels were completely buckled so that the car could not be moved, and all portions of the car were on the east side of the road, with the head and tail lights all burning.

While in this position, another car, constantly referred to in the record as the Matilla car, came from the south, passed respondent on the west side, and stopped seventy feet ahead of him on the east side of the road close to the guard rail. After the Matilla car had passed, respondent stepped out on the right-hand side and went to get his flashlight from the compartment to flag traffic. Looking north he saw the head lights of appellant's car coming toward him, and almost instantly he was hit and knocked unconscious. A car going south, as appellant's car was going, would

have a clear view of the entire road for four hundred twenty feet ahead to the point of the collision and could see the entire east half of the road when he was five hundred feet back from the point of collision.

The facts as related by respondent were corroborated, to some extent, by three related and interested witnesses and one unrelated and, apparently, disinterested eye witness.

The eye witness, who was riding in a car going north, approached the disabled car of respondent from the opposite direction from which appellant's car approached. He said he had no difficulty seeing the disabled car in and across the road when he was five or six hundred feet from it, and that it was entirely on the east side of the road with one end of it two or three feet from the east guard rail; that he saw appellant's car at a distance of two hundred feet down the road before it hit respondent's car, and that it was travelling between forty and fifty miles per hour and did not slack its speed. The car in which he was riding stopped one hundred to one hundred fifty feet from the point of the impact.

He also said that the force of the collision was such that it knocked respondent's car forty feet from the south end of the guard rail and knocked the heavy box, or compartment, that was bolted to the rear of his car, seventy-five to one hundred feet from where the car came to rest; and that appellant's speed was so great it knocked or dragged respondent's car forty or forty-five feet and then went thirty feet further, ending in the ditch on the west side of the road, a total distance of one hundred forty feet from the point where appellant said he applied his brakes hard until they were set.

Appellant stated he had hydraulic brakes on his car which were in perfect condition; and that, when

travelling thirty-five miles per hour, as he said he was travelling prior to the collision, he could have stopped his car in fifty or fifty-five feet.

Respondent submitted his case on two theories: First, that appellant was negligent in crossing over to the left side of the road and colliding with his car; and second, under the doctrine of last clear chance.

Appellant alleged, and contended at the trial, that respondent was drunk, and that being drunk is conclusive proof that he was negligent in not getting out of the dangerous place on the road as appellant's car approached.

The statement of facts shows that the testimony of seven witnesses on behalf of respondent as to sobriety immediately before and after the accident was purposely omitted from the record as not being material. Appellant caused the trial court to certify that the statement contained all of the evidence and all of the material facts. That being the condition of the record, all contention based upon the drunkenness of respondent as a phase of his contributory negligence will be disregarded.

Appellant also vigorously insists that the testimony of respondent should be wholly disregarded because it is opposed to the law of physics and wholly incredible. We do not so consider. Whether his car could and did behave in such a manner when his steering gear became out of repair is not inherently improbable or incredible. The facts were not conceded nor beyond dispute. The matter of the credibility of respondent and the probability of that testimony was a question of fact for the jury and not a question of law for the court to determine. Therefore, the trial court would have erred had it sustained the challenge of appellant to the sufficiency of the evidence or granted a motion for judgment n. o. v. upon that ground. Cf.

*Tooker v. Perkins,* 86 Wash. 567, 150 Pac. 1138, and *Hartnett v. Standard Furniture Co.,* 162 Wash. 655, 299 Pac. 408.

Appellant testified that he was blinded by the bright headlights of the Matilla car, parked and facing north, so that he could not see beyond it, and argues that this brings the case within the rule announced in several cases by this court that it is a well recognized fact that objects to the rear of automoble headlights are obscured to the vision of the driver of an approaching car until after such lights are passed. *McMoran v. Associated Oil Co.,* 144 Wash. 276, 257 Pac. 846; *Griffith v. Thompson,* 148 Wash. 243, 268 Pac. 607; *Frowd v. Marchbank,* 154 Wash. 634, 283 Pac. 467; *Long v. Hicks,* 173 Wash. 17, 21 P. (2d) 281; *Brauns v. Housden,* 186 Wash. 149, 56 P. (2d) 1313.

All of those cases were upon different facts and circumstances than are present here. Here, that was a question for the jury. *Skates v. Conniff,* 153 Wash. 538, 280 Pac. 15, and *Knutson v. McMahan,* 186 Wash. 518, 58 P. (2d) 1033.

In this case, since appellant was an interested witness, the jury had the right to disregard his testimony and resolved that question against him. *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432.

Rem. Rev. Stat., § 6362-41 [P. C. § 196-41] (9), requires a car, when meeting another car, to seasonably turn to its right-hand side of the road; and we have held that, when a car is on the left-hand side of the road and involved in an accident, the burden of justifying such driving is on the person driving on the wrong side of the road. *Stack v. L. J. Dowell, Inc.,* 172 Wash. 9, 19 P. (2d) 125; *Thomas v. Adams, supra; Wilson v. Congdon,* 179 Wash. 400, 37 P. (2d) 892.

One of the appellant's witnesses said that appellant drove straight down the road without swerving. That alone would make it a sufficient question for the jury.

Upon all of the facts above stated and others present in the record, it is manifest that appellant had a last clear chance to avoid the accident. Upon his own testimony that he could have stopped his car within fifty or fifty-five feet, the testimony of others that they saw the position of respondent's car four hundred or five hundred feet away, and the testimony of respondent himself that he saw appellant's car seventy feet away, far enough away to give time to stop, makes a stronger case than that of *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943. To the same effect is *Chapin v. Stickel,* 173 Wash. 174, 22 P. (2d) 290. The conditions existing are very like those in *Smith v. Gamp,* 178 Wash. 451, 35 P. (2d) 40, which is controlling.

Cases relied upon by appellant, *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Bullis v. Ball,* 98 Wash. 342, 167 Pac. 942; *Shanley v. Hadfield,* 124 Wash. 192, 213 Pac. 932; *Frowd v. Marchbank, supra; Long v. Hicks, supra; Neeley v. Bock,* 184 Wash. 135, 50 P. (2d) 524, are upon vitally different facts and circumstances than the present case.

Hence, the trial court was correct in submitting to the jury the rule of last clear chance. No complaint is made of the form of the instruction.

The contention is made that several instructions are duplicitous and overemphasize the duty resting upon appellant.

Several statutes and grounds of negligence were relied upon by respondent. While necessary for the trial court to submit each ground of negligence, without unnecessary repetition, a judgment is not to be reversed for such unnecessary repetitions unless, in

the furtherance of justice, it sometimes becomes necessary to grant a reversal, which is not true here. *Chicago, Milwaukee & St. Paul R. Co. v. Alexander,* 47 Wash. 131, 91 Pac. 626; *Cecchi v. Bosa,* 186 Wash. 205, 57 P. (2d) 1064.

In the last cited case, we said:

"A party has the right to have every issue that is properly presented by the pleadings and evidence submitted to the jury in clear, concise and intelligible language, within the comprehension of persons who are ordinarily not educated in law."

Appellant finally contends that a new trial should have been granted him because of the refusal to give certain requested instructions reading:

No. 7. "The defendant was under no obligation to stop or check his speed before meeting another car, and it is only when lights or other circumstances indicated that the highway is blocked or that the passage is so narrowed as not to afford a safe passage within the speed limit that he is chargeable with negligence if he does not check his speed."

No. 9. "When two automobiles meet each other on a highway in the night-time, they may, under all ordinary conditions proceed to pass at any rate of speed within the statutory limit without being subject to a charge of negligence."

At first impression, we thought this contention correct. The court, however, gave the following instruction:

No. 14. "The operator of a motor vehicle upon the highway is entitled, particularly at night, to assume that if there are any objects or obstructions in the highway that a red light will be displayed or that a warning of some kind will be given him of its location, and it is not negligence in itself for one to proceed at a lawful rate of speed.

"The operator has a right to indulge in the presumption that no car will be parked or standing on the highway in a place prohibited by statute, or with-

out lights, and he can not be charged with negligence for indulging such presumption until such time as he knew, or by the exercise of reasonable care should have known, to the contrary."

The last quoted instruction seems to have correctly covered the law under our statute and even under the theory of appellant as presented by the two requested instructions above quoted.

We conclude that there is no reversible error in the trial of the case, and the judgment is affirmed.

MILLARD, C. J., TOLMAN, STEINERT, and GERAGHTY, JJ., concur.

BEALS, J. (dissenting)— I am unable to concur in the majority opinion in this case in one respect, that is, with reference to the matter of the last clear chance. In his amended complaint, respondent alleged that, after the breaking of the steering gear of his car, which had been proceeding in a southerly direction along the west side of the highway, the machine came to a stop facing north on the east side of the road, with its front end resting against the guard rail and the rear end one or two feet out therefrom. He further alleged that he had just stepped down from the car on the right side thereof when appellant's automobile, approaching from the north, struck the left rear of his car, injuring him. As one of the grounds of appellant's negligence, respondent alleged that

". . . the operator of defendant's automobile failed and neglected to stay on the right side of the road, when by so doing the collision could have been avoided."

Respondent's car, then, was facing northerly, although the headlights were pointing somewhat off the road to the right, entirely on its right-hand side of the road as it was facing.

Concerning the accident, respondent testified:

"Q. When you started to get out of the car—you started to get out I believe you said over near the guard-rail. A. On the right-hand side? Q. Yes, over near the guard-rail, on the right-hand side? A. Yes, sir. Q. Where did you walk? A. I walked only about four steps to get around the car. Q. When you walked down there what did you do? A. I got down to the back end of the car. Q. And what happened immediately when you got to the back end of the car? A. Well, I looked up and I seen some headlights. Q. And then what happened? A. And then I just raised my hand, and that is all I can tell you about it. Q. Was your car smashed into as you were back of it there? A. Yes, sir."

On cross-examination, respondent told the same story. Respondent alleged in his amended complaint and testified on the trial that, under the law of the road, his car, facing as it was when it came to a stop, was on its right side of the highway, and that at all times it remained east of the center line. This being true, according to his complaint and testimony, respondent was not negligent in any particular (his car having broken down and being incapable of movement under its own power), and in the absence of negligence on his part, the doctrine of last clear chance was not applicable. *Huber v. Hemrich Brewing Co., ante* p. 235, 62 P. (2d) 451. True, according to other evidence in the case, respondent's car was standing across the center line of the highway, but this was not respondent's theory. Respondent could not have been mistaken as to the point at which his automobile came to rest. He identified the position of the car, and his position, with meticulous detail.

The doctrine of last clear chance has been adopted to prevent injustice in certain cases and to allow an escape from the contributory negligence doctrine when

it clearly appears that, in spite of such negligence on the part of the plaintiff, he should, if the trier of the facts so finds, be allowed to recover. I am of the opinion that, when a party to an action unequivocally pleads and testifies to a state of facts concerning which he cannot be mistaken, and when, under his testimony, if true, the last clear chance doctrine is not applicable, he cannot claim the benefit of that doctrine on the theory that his sworn pleading was mistaken and his evidence false and that the jury should not believe him. Such a doctrine would allow one claiming relief to avail himself of a rule established for his benefit, while at the same time maintaining a state of facts under which the rule is not applicable.

In the case of *Belkin v. Skinner & Eddy Corp.*, 119 Wash. 80, 204 Pac. 1046, on appeal from a judgment in favor of a plaintiff in a personal injury suit, this court held that an instruction submitting to the jury the "momentary forgetfulness" doctrine was erroneous. Considering this instruction, the court used the following language:

"One of the objections made to this instruction is that there is no testimony upon which to base it. We are required to hold that this objection is well taken. We have very carefully read the respondent's testimony as it appears in the statement of facts, and we are unable to find any intimation that he was injured because he momentarily forgot the dangers or defects of which he complains. On the contrary, the testimony shows that he did not know whether there were two or three planks on the staging upon which he was working, and that he did not know that the planks along the side of the hatch where he was working were in part pushed under the deck of the boat, and that he did not know that there was no planking at the end of the hatchway where he fell. Manifestly, if he did not know of these defects or dangers, he could not have forgotten them. Nor can we say that this instruction was harmless. At best, the doctrine of

'momentary forgetfulness' has a tendency to defeat and annul the doctrines of contributory negligence and assumption of risk and should not be applied to all cases and circumstances, and where it is applied it is manifest that it is a doctrine which must clearly influence the case and the conclusions which may be reached by the jury. In other words, when this doctrine is applied to a case it is of vital importance.''

While the questions considered in the case cited involved a rule other than that of last clear chance, the reasoning of the court in the language quoted is, in my opinion, applicable to the question now before us.

In the case of *Lee v. Gleason & Co.*, 146 Wash. 66, 262 Pac. 133, the trial court had given the jury an instruction which this court states ''was obviously intended to cover the doctrine of 'last clear chance.' '' This instruction was held erroneous, this court saying:

''If the respondent's theory is correct, the deceased was not guilty of negligence in any respect. Before the doctrine of last clear chance can be applied, it is one of the essentials that the person injured must have been negligent and have thereby been put in a position of danger. *MacDonald v. Seattle,* 126 Wash. 1, 217 Pac. 39.''

We have repeatedly laid down this rule, which is beyond question sound.

The supreme court of South Dakota, in the case of *Miller v. Stevens,* 63 S. D. 10, 256 N. W. 152, said:

''However, entirely regardless of the weight or credibility of Johnson's (a witness called by the plaintiff) testimony, we believe it is the better and the sounder view that respondent cannot, under the circumstances shown by this record claim the benefit of a version of relevant facts more favorable to her contentions than she herself has given in her own testimony. As well stated by Lumpkin, J., in *Western & A. R. Co. v. Evans* (1895), 96 Ga. 481, 23 S. E. 494, 495, 'Every witness is under a solemn obligation to tell the truth, the whole truth, and nothing but the

truth; and this obligation is especially binding upon one who seeks, by his own testimony, to establish a substantial right against another. *Railway Co. v. Beauchamp,* 93 Ga. 6, 19 S. E. 24. It surely can never be unfair to a party laboring under no mental infirmity to deal with his case from the standpoint of his own testimony as a witness.' "

In 50 A. L. R. 973, the rule is stated in the following language:

"A plaintiff of average intelligence, in full possession of his faculties, who testifies to facts peculiarly within his knowledge, which, if true, utterly destroy his case, is not entitled to go to the jury merely because defendant contradicts such facts."

In the case of *Virginia Electric & Power Co. v. Vellines,* 162 Va. 671, 175 S. E. 35, the supreme court of appeals of Virginia, on an appeal from a judgment in plaintiff's favor in an action for personal injuries, reversed the judgment, using the following language:

"These somewhat extended excerpts from plaintiff's testimony are made necessary by the fact that the decision of this case turns upon his evidence. He is bound by his account of what he saw and did. *Massie v. Firmstone,* 134 Va. 450, 114 S. E. 652, and cases which have followed it. A plaintiff who has no case upon his own evidence has no case at all. He said that he looked and saw no car coming, and that none was in sight when he signaled his purpose to turn into 8th street, for he looked and saw none until it was immediately upon him. He, at least, cannot complain because we accept his statements as true."

This rule should be applied in the case at bar, in so far as the instruction concerning last clear chance is concerned. This doctrine is applicable only in a limited class of cases, and must be used with discrimination. In my opinion, under respondent's pleadings and testimony, the trial court erred in submitting to the jury the question of last clear chance, and the

judgment appealed from should be reversed and a new trial ordered.

MAIN, MITCHELL, and BLAKE, JJ., concur with BEALS, J.