[No. 28068. Department One. January 31, 1941.]

EDWARD RIEGER, a Minor, by John Rieger, his Guardian ad Litem, Respondent, v. A. J. KIRKLAND et al., Appellants.[1]

[1] Reported in 111 P. (2d) 241.

328

*H. Earl Davis,* for appellants.

*Robertson & Smith,* for respondent.

STEINERT, J.—Plaintiff, a minor, brought suit through his guardian *ad litem* to recover damages for personal injuries and for property destruction resulting from a collision, in which plaintiff, while riding his bicycle, was struck by an automobile, owned by defendants, and being driven at the time by defendant wife. Tried to a jury, the action resulted in a verdict in plaintiff's favor. Judgment was entered thereon, and defendants appealed.

The accident occurred at about four o'clock in the afternoon of August 14, 1939, at a point, variously designated, within the right of way of a public highway known as Valleyway, just outside of the corporate limits of the town of Dishman, Washington. Valleyway, which runs in an easterly and westerly direction, had a graveled roadway about twenty-one feet in width. There were no sidewalks or curbs along the roadway, and some of the owners of the abutting properties had, for some time past, extended and maintained their front lawns out, or near, to the traveled portion of the road. The neighborhood in that vicinity was a well-settled residential community.

Dwelling houses were located at approximately half-block intervals, and a grade school was near by. Many of the children living in the vicinity rode bicycles, and used the Valleyway road for that purpose.

The home of one Roy O. Dyer was situated on the north side of Valleyway. A private driveway, connecting with Valleyway, was located on the eastern side of the Dyer property, and east of the driveway was a row of shrubs extending to the road. Near the outer end of the row of shrubbery, and within a few feet of the edge of the road, were a telephone pole and a mail box which was attached to a post. Just east of the row of shrubs was another private driveway, which led from the highway to the residence of one Mrs. White. The lawn fronting the Dyer property extended to the edge of the traveled portion of Valleyway.

During the afternoon of August 14, 1939, respondent, then eleven years of age, had gone to the home of the Dyers for amusement; while there, he was engaged a part of the time in helping to irrigate the Dyer lawn. At about 3:30 or 4:00 o'clock, he started for his home, which was located a block or two east of the Dyer property and on the opposite side of Valleyway.

Respondent testified that he mounted his bicycle, which had been leaning against the front of the Dyer residence, rode across the lawn to the driveway, and then coasted down the driveway toward the highway; and that he saw the appellants' car, which was traveling in a westerly direction, just after it passed the row of shrubbery bordering the driveway. In response to numerous questions, both on direct examination and on cross-examination, he repeatedly stated that he was struck by the automobile before he reached the highway. At one stage of his cross-examination,

however, he testified that he was "on the edge of the road," but not "into" it, at the time. Upon cross-examination, he also testified that, immediately prior to the impact, he turned his bicycle to the west in an attempt to get out of the way of the automobile.

Mrs. Kirkland, the driver of the automobile, testified that she was traveling at a speed of fifteen or twenty miles per hour; that she did not, to her knowledge, veer to her right at the point of impact; that she was watching the road straight ahead; and that she did not see the boy until just the instant before the collision. On cross-examination, she testified that, as she approached the White residence, which was just east of the Dyer property, she "may have glanced" toward the lawn swing at the side of the house to see whether or not her good friend, Mrs. White, was there; that she was driving straight ahead; that she had to watch the road; and that "the sun was in my eyes and I wasn't looking much."

The only disinterested witness who saw the collision was a lady who was sitting on the front steps of her home about three hundred feet west of the scene of the accident, and was looking directly east. She first observed appellants' automobile about one hundred feet east of the Dyer residence, at which time the automobile was "pretty well towards the middle of the road." The automobile, she stated, was not weaving or turning at the time, but, as it approached the front of the Dyer property, it swerved toward the lawn, and got off the shoulder of the road. She did not observe the boy until after he had been struck and thrown into the air by the impact.

There was considerable evidence relative to the tracks left by the bicycle on the lawn. That evidence was practically uniform. The tracks, it appears, were very distinct. The witness who saw the collision from

her front steps testified that the tracks started about three feet from the Dyer driveway, went over to the edge of the driveway, and then headed toward the highway. She could not remember whether or not the tracks continued on into the highway. The testimony of a witness who was the first person to reach the boy after the accident was substantially the same as that of the preceding witness. The latter witness, however, testified to the further fact that the bicycle tracks turned west at the edge of, but while still on, the lawn. Although that witness testified, on direct examination, that he was unable to say whether or not the tracks ever reached the highway, he testified on cross-examination that the tracks did not get quite to the gravel. A third witness testified that the tracks on the lawn indicated very plainly where the boy on the bicycle had made a "whirl" to the west, and that the tracks did not lead into the road, but stopped at the edge of the lawn. Appellant husband, who came to the scene of the accident a few minutes after its occurrence, designated upon a map the course of the bicycle tracks, and according to his designation the tracks were entirely on the lawn. In addition, he testified affirmatively that such was the fact. Appellant wife also saw the tracks to the edge of the lawn only. The last witness to testify upon that subject was Mr. Dyer, and his testimony was in accord with that of the other witnesses.

Concerning the tracks made by appellants' automobile, Mr. Dyer testified that they came along the road from the east, about a foot from the bank of the abutting property, as shown on a photograph, and "right about where you would park an automobile"; that they went past the driveway of the White property, and continued west beyond the Dyer driveway and "until where the impact happened," at which

point the tracks swerved to the opposite side of the road. There was no other testimony on that subject.

All the evidence, with the exception of the testimony of Mrs. Kirkland, was practically uniform to the effect that the collision occurred a few feet west of the Dyer driveway, near the point where that driveway turned into the road. Mrs. Kirkland was alone in her testimony that the collision occurred three or four feet *east* of the driveway. Broken glass from the headlight of the automobile was found to the west of the driveway, and a few feet out into the road. The automobile, it will be recalled, had swerved to the opposite side of the highway after the impact, and stopped fifty feet away from the point of collision. According to Mr. Kirkland's testimony, examination of the automobile after the accident revealed that the right headlight had been bent back and to the left, and that a slight dent had been made in the top of the right fender, near the headlight.

Respondent was thrown high into the air by the impact, and upon falling to the ground lay on the edge of the Dyer lawn, about eight feet from the driveway, with his head on the lawn, facing in an easterly direction, and with the rest of his body on the road. The bicycle was demolished, the greater part of it being thrown about twenty-five feet west of the place where the boy lay.

Respondent sustained a fracture of the tibia, the large bone, of the left leg, lacerations on the arms, abdomen, and right leg, and bruises practically all over his body. He was taken to a hospital, where his leg was set and placed in a cast. Swelling of the leg necessitated opening and enlarging of the cast two days later. He remained in the hospital for three weeks, after which he was confined to his home for six weeks. About a month after his removal to his

home, he was able to use crutches. The cast was removed, and the crutches discarded, about Christmas time, in 1939. The injury, it will be recalled, was sustained on August 14th of that year. Thereafter the boy was given massage treatments of the leg and foot. At the time of the trial, which began January 18, 1940, he was using a cane in walking; his walk, however, was attended by a limp; and the heel of the injured foot was still in such condition that it would swell up after any considerable use of the foot. A physician testified that the circulation in the injured leg would be impaired for several months longer.

█ We have set forth the testimony in detail for the reason that appellants, at the outset, challenge the sufficiency of the evidence to support the jury's finding of negligence on the part of Mrs. Kirkland, the driver of appellants' car, and contend further that, in any event, respondent was guilty of contributory negligence as a matter of law. In passing upon those contentions, we must, of course, not only regard as true all competent evidence which is favorable to respondent, but must also give him the benefit of every favorable inference that can reasonably be drawn from such evidence. *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113; *Pyle v. Wilbert,* 2 Wn. (2d) 429, 98 P. (2d) 664; *Wiggins v. North Coast Transportation Co.,* 2 Wn. (2d) 446, 98 P. (2d) 675; *Pierce v. Pacific Mutual Life Ins. Co., ante* p. 151, 109 P. (2d) 322.

█ Viewed in that light, the evidence was clearly sufficient to justify a finding that respondent was struck before he reached the highway; that Mrs. Kirkland was negligent in the operation of the automobile; and that her negligence was the sole proximate cause of respondent's damages.

The damage sustained by, and appearing on, the front portion of the automobile, and the fact that

the bicycle was thrown twenty-five feet west of the spot where the boy lay, refute appellants' claim that the boy ran into the side of the automobile. The testimony relative to the bicycle tracks on the lawn, and the fact that the tracks turned west at the edge of the lawn, clearly constituted sufficient basis for a finding by the jury that the boy was struck while he was still on the lawn. It is undisputed that respondent was on his way home at the time. His home was east of the Dyer residence. Had respondent ridden blindly into the highway, as contended by appellants, the tracks would have led toward the east; they would not have "whirled" to the west. The evidence corroborated respondents' claim that he was still on the Dyer lawn when he was forced to turn west in an attempt to avoid the collision.

In this connection, appellants also attempt to invoke the rule that one confronted with an emergency is not held to the exercise of the same degree of care to which he, or she, would otherwise be held. That doctrine is not applicable to the facts shown by the record herein. No attempt was made to charge Mrs. Kirkland with negligence on the basis of what she did, or did not do, *after* seeing respondent. She testified that she did not see the boy until an instant before the collision. Her negligence, as the jury was entitled to find, lay in her failure to exercise due care to see the boy, and in the manner in which she operated her car at, and immediately prior to, the time of the collision. Her failure in either of those respects was in no way the result of, or affected by, an "emergency."

Appellants' second contention relates to the admission of certain testimony concerning an alleged offer on the part of Mrs. Kirkland, made immediately after the accident, to pay respondent's doctor and

hospital bills. Appellants contend that the admission of that testimony constituted reversible error.

The testimony relative to that offer was adduced in the following manner: Upon respondent's case in chief, the mother of respondent testified that, just after the boy had been picked up from the highway and carried over onto the lawn in front of the Dyer home, Mrs. Kirkland asked her whether she had any preference as to the doctor who should be called and the hospital to which the boy should be taken; that, at the suggestion of Mrs. Kirkland, they decided to call a doctor whom Mrs. Kirkland knew; and that Mrs. Kirkland stated at the time that "everything will be paid for." No objection to that testimony was proffered by appellants, nor was any motion made to strike it.

After respondent had rested his case in chief, and during the development of appellants' evidence, Mrs. Kirkland, on cross-examination, admitted that she had suggested the name of the doctor. She was then asked whether or not she had said to Mrs. Rieger at the time "that everything would be paid for." Her answer was, "I don't remember." Appellants' counsel thereupon interposed an objection, assigning as a specific ground therefor Rem. Rev. Stat., Vol. 7A, §6360-134 [P. C. § 2696-756], to which a more specific reference will be made later herein. Appellants' counsel also moved at that time that the question and answer be stricken. After some colloquy between court and counsel, the objection was overruled, and the motion was denied.

Finally, on rebuttal, respondent recalled a witness who testified to having heard Mrs. Kirkland make the statement to Mrs. Rieger "that everything will be paid for." Appellants' counsel excepted to that testimony on the grounds that it was not part of the

*res gestae,* that it was not proper rebuttal, and that sufficient grounds for impeachment of Mrs. Kirkland had not been laid. While error is assigned upon the admission of the rebuttal testimony, the matter is not argued at all in appellants' opening brief. In the reply brief, only a casual reference is made to the alleged inadmissibility of the rebuttal testimony, and the sole argument there advanced is that the statement in question was not part of the *res gestae.*

Assuming that the entire testimony concerning the offer was objectionable, we do not believe that, under all the circumstances presented by the record, reversible error was committed. The evidence came in at first without any objection, and the mere fact that it was sought later to elicit the same evidence from Mrs. Kirkland herself, who simply disclaimed any recollection of making the statement, would not, in our opinion, be sufficient to constitute reversible error. Had proper objection been made in the first instance, a different question might be presented.

■ Since appellants' objections to the rebuttal evidence, which was of the same tenor, are not argued in the brief, we do not feel called upon to discuss them.

■ Furthermore, there is another reason why appellants' contention must be held to be untenable. Appellants' specific ground of objection to the question asked of Mrs. Kirkland was, and now is, that the admission of such testimony was prohibited by Rem. Rev. Stat., Vol. 7A, §6360-134, which provides:

"(c) The operator of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and vehicle license number and shall exhibit his vehicle operator's license to any person struck or injured or the operator or any occupant of, or any person attending, any such vehicle collided with and shall render to any person

injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his behalf. *Under no circumstances shall the rendering of assistance or other compliance with the provisions of this subsection be evidence of the liability of any operator for such accident; . . .*" (Italics ours.)

Appellants rely specifically upon that portion of the quoted section which we have italicized. While the statute requires the furnishing of the required information and the rendering of necessary assistance, it does not require a motorist to pay, or to offer to pay, the medical expenses of the injured person. The statute, in effect, merely provides that performance of those things which the motorist is therein required to do, shall not be considered an admission of liability. It clearly, however, makes no attempt, and there is no reason why it should attempt, to preclude evidence of acts or statements from which liability on the part of the motorist may logically be inferred.

Whether or not the evidence here under consideration was admissible, was, and is, to be determined by general rules of evidence. The real question involved here is, simply, whether or not the offer to pay the medical expenses constituted an admission of fault. That question, however, was at no time presented to the trial court. The only question presented was whether or not the *statute* forbade the admission of such evidence. While it is doubtful that, under the circumstances here involved, Mrs. Kirkland's offer actually constituted an admission of fault, (See *Moore v. Stetson Machine Works,* 110 Wash. 649, 188 Pac. 769; *Libbee v. Handy,* 163 Wash. 410, 1 P. (2d) 312; *Arnold v. Owens,* 78 F. (2d) 495; *Quiel v. Wilson,* Ohio App.,

7 Automobile Cases (C. C. H.) 1166), nevertheless, appellants' failure to base their objection before the trial court upon that ground precludes review of that question on appeal. *Finholt v. Seattle,* 139 Wash. 497, 247 Pac. 950; *Mosler v. Woodell,* 189 Wash. 583, 66 P. (2d) 353; *State v. Pappas,* 195 Wash. 197, 80 P. (2d) 770; *Marks v. Scaler's, Inc.,* 2 Wn. (2d) 277, 97 P. (2d) 1084. In the *Pappas* case, *supra,* we said:

"If an objection naming a specific, but untenable, ground be overruled, it cannot upon appeal be made to rest upon another ground which, although tenable, was not called to the attention of the court during the trial."

Appellants next contend that the trial court erred (1) in failing to give a requested instruction to the effect that the operator of a motor vehicle is entitled to drive "on any portion" of the right side of the highway, and (2) in giving two instructions wherein, it is alleged, the jurors were instructed to find Mrs. Kirkland negligent if they believed that she drove her automobile to the extreme right edge of the highway.

■ The refusal to give the requested instruction was proper. There is no unqualified right in a motorist to drive upon "any portion of" the right hand side of the road. Such right is a relative one only; it does not confer upon the motorist the right to disregard all other conditions and circumstances that may exist. For instance, it would not entitle the driver of an automobile, while proceeding along the right side of a highway, to swerve suddenly over to the right hand edge of the road and collide with a pedestrian or bicyclist whose presence there, was, or ought to have been, known to the driver of the automobile.

■ As to the instructions that were given by the trial court, appellants' statement of their purport is inaccurate. The substance and effect of the instructions were not merely that the jury was entitled to find that

Mrs. Kirkland was negligent if it found that she "drove her automobile to the extreme right edge of Valleyway." The instructions were as follows:

"You are instructed that if you believe that the defendant driver [Mrs. Kirkland] drove her automobile to the extreme right edge of Valleyway *and in such a manner as to bring her automobile in collision with the bicycle of plaintiff [respondent] while it was still upon the Dyer driveway and before it actually entered upon said Valleyway, such operation of the automobile would amount* to negligence on her part." (Italics ours.)

and

"You are instructed that if you believe that the collision between the bicycle of the plaintiff [respondent] and the automobile of the defendants [appellants] occurred before the bicycle had reached the roadway of Valleyway, and while the bicycle was upon the Dyer private driveway, then your verdict should be for the plaintiff [respondent]."

Under the issues presented, those instructions were proper.

In this connection, appellants further complain that the second of the instructions just quoted unduly emphasized the first. While unnecessary repetition of instructions is to be avoided, such repetition does not constitute reversible error unless it appears that the complaining party was prejudiced thereby. *Alaska Steamship Co. v. Pacific Coast Gypsum Co.,* 78 Wash. 247, 138 Pac. 875; *Smith v. Bratnober,* 188 Wash. 244, 62 P. (2d) 455; *American Products Co. v. Villwock, ante* p. 246, 109 P. (2d) 570. This case does not present such a situation.

Appellants next assign error upon an instruction in which the court charged the jury that "it is the duty of every driver of an automobile to keep a lookout for bicyclists, pedestrians or others about to enter upon

or entering upon the roadway in front of such automobile." The only objection to that instruction is that it was not justified by appellants' version of the evidence. It is obvious, however, that there was ample evidence in the record upon the basis of which the jury would have been justified in finding that the accident resulted solely from Mrs. Kirkland's failure to keep a proper lookout.

Under this assignment, appellants further complain of an instruction relative to the duty of Mrs. Kirkland to give warning of her approach if she "saw, or in the exercise of reasonable care should have seen the bicycle of plaintiff approaching Valleyway." Appellants argue that Mrs. Kirkland "could not see" the approaching bicycle, and that accordingly there was no duty on her to give warning of her approach. The answer to that argument is that the jury was not obligated to find that appellants' version of the accident was the correct one. Considered in the light most favorable to respondent, the evidence was clearly sufficient to justify a finding by the jury that Mrs. Kirkland "in the exercise of reasonable care should have seen the bicycle."

Finally, appellants complain of the amount awarded by the jury to respondent for the damages sustained by him. The award was in the amount of two thousand dollars. The medical bills alone amounted to $348.35. The bicycle, valued at twenty dollars, was demolished. Injured on August 14, 1939, respondent was unable to place any weight on his injured leg until shortly before Christmas of that year. At the time of the trial, in January, 1940, respondent was still required to use a cane; he could not walk without a limp; and any considerable use of his right foot would cause it to swell. The pain and suffering resulting from the collision, were also factors to be considered. Under the evidence, we would not be justified

in declaring the verdict to be the result of passion and prejudice on the part of the jury.

The judgment is affirmed.

ROBINSON, C. J., BLAKE, MAIN, and DRIVER, JJ., concur.